MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Jared W. Connors (*pro hac vice* to be filed)
jconnors@meyerwilson.com
Ryne E. Tipton (*pro hac vice* to be filed)
rtipton@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
brian@levinlawpa.com
Brandon T. Grzandziel (*pro hac vice* to be filed)
brandon@levinlawpa.com
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
Telephone 305-539-0593

Jacob Polin (SBN 311203)
jacob@levinlawpa.com
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050

*Attorneys for Plaintiff Brewer and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN BREWER, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>OTTER.AI, INC.<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL ENCLOSED** |

## INTRODUCTION

1.      Defendant Otter.ai, Inc. ("Otter") has developed and provides to the public an artificial intelligence-powered meeting assistant called Otter Notetaker.  Otter Notetaker engages in real-time transcription of Google Meet, Zoom, and Microsoft Teams meetings for Otter accountholders and other users.

2.      By virtue of providing the Otter Notetaker service, however, Otter also records, accesses, and records the contents of private conversations between Otter accountholders who use the Otter Notetaker and meeting participants who do ***not*** subscribe to Otter's services.

3.      Crucially, Otter does not obtain prior consent, express or otherwise, of persons who attend meetings where the Otter Notetaker is enabled, prior to Otter recording, accessing, reading, and learning the contents of conversations between Otter accountholders and other meeting participants.  Moreover, Otter completely fails to disclose to those who do set up Otter to run on virtual meetings, but who are recorded by the Otter Notetaker, that their conversations are being used to train Otter Notetaker's automatic speech recognition ("ASR") and machine learning models, and in turn, to financially benefit Otter's business.

4.      Through its use of the Otter Notetaker, Otter has failed to comply with federal and California law—namely, the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510, *et seq.*; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*; the California Invasion of Privacy Act ("CIPA") Cal. Penal Code §§ 631 and 632; California's Comprehensive Computer Data and Fraud Access Act ("CDAFA"), Cal. Penal Code § 502 *et seq.*; the California common law torts of intrusion upon seclusion and conversion; and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

5.      Plaintiff Justin Brewer ("Plaintiff Brewer" or "Plaintiff"), had his conversations intercepted by Otter, and brings this action, individually and as a

representative of Americans and Californians, to prevent Otter from further violating privacy rights and to recovery a panoply of damages against Otter for having recorded, accessed, read, learned, and utilized the contents of his conversations without procuring prior consent.

## PARTIES

6.    Plaintiff Brewer resides in San Jacinto, California, where he intends to remain.

7.    Defendant Otter is a limited liability company incorporated under Delaware law.  Its principal place of business is located at 800 W. El Camino Real, Suite 170, Mountain View, CA 94040.

## JURISDICTION & VENUE

8.    This Court has personal jurisdiction over Otter because its principal place of business is in California.  On information and belief, Otter's decisions concerning use of its Otter Notetaker software to intercept Class members' communications and train its ASR and machine learning tools emanated from its California headquarters.  All Class members' claims arise from, and are closely related to, Otter's contacts with California.  Thus, it is also fair and reasonable for this Court to exercise jurisdiction over Otter.

9.    This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  At least one member of the proposed Class is a citizen of a state different from that of Otter; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members, and none of the exceptions under the subsection apply to this action.

10.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges claims arising under federal law—specifically, under the ECPA and CFAA.  Moreover, the Court may exercise supplemental jurisdiction over the California state law claims contained in this Complaint pursuant to § 1367.

11.    Venue is proper in the Northern District of California because Otter's

principal place of business is in Mountain View and a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

**A.    Otter's Nonconsensual Interception and Use of Plaintiff's and Class Members' Communications**

12.    Since its formation in 2016, Otter has grown rapidly, amassing over 25 million global users.[1]

13.    Based on web traffic data, and upon information and belief, over 50% of Otter's users reside in the United States.[2]

14.    In March of 2025, the company surpassed $100 million in annual recurring revenue ("ARR"), an exceptional figure for a company of Otter's size.[3]

15.    Much of Otter's growth is attributable to its AI-powered meeting assistant, the Otter Notetaker.  The Otter Notetaker, whose software and functionality is also part of a broader and enhanced AI transcription service called OtterPilot, is available to Otter accountholders.



---

[1] Otter, *Otter.ai Breaks $100M ARR Barrier and Transforms Business Meetings Launching Industry-First AI Meeting Agent Suite* (March 25, 2025), https://otter.ai/blog/otter-ai-breaks-100m-arr-barrier-and-transforms-business-meetings-launching-industry-first-ai-meeting-agent-suite#:~:text=With%20over%2025%20million%20global,agentic%20AI%2C%20but%20defining%20it (last accessed August 12, 2025).

[2] Similarweb, *Otter.ai Website Analysis for July 2025*, https://www.similarweb.com/website/otter.ai/#geography (last accessed August 12, 2025).

[3] *See supra* note 1.

**Class Action Complaint**

16.    For Otter accountholders, the Otter Notetaker joins Google Meet, Zoom, and Microsoft Teams meetings as a meeting participant, transmitting data directly to Otter in real time for processing and transcription purposes.[4]

17.    Thus, the Otter Notetaker is not a tool used solely by *the accountholder* to record others.  Instead, the Otter Notetaker is a tool used *by Otter itself*—a separate and distinct third-party entity from its accountholders and other parties to the conversation—to record and transcribe conversations to which it is not a party.

18.    When an accountholder's Otter Notetaker joins a meeting, it will ask for consent to join and record the meeting ***from the meeting host*** if the meeting host is not an Otter accountholder.[5]  However, it does not seek consent to join the meeting from any other meeting participant:



19.    Nor does it permit any other participant, besides the meeting host, to

---

[4] Otter, *Otter Notetaker Overview*, https://help.otter.ai/hc/en-us/articles/4425393298327-Otter-Notetaker-Overview (last accessed August 12, 2025).

[5] Otter, *Set up Otter Notetaker to join your Zoom meeting*, https://help.otter.ai/hc/en-us/articles/19504911385495-Set-up-Otter-Notetaker-to-join-your-Zoom-meeting (last accessed August 12, 2025).

1    disable use of the Otter Notetaker during the meeting.

2        20.    In fact, if the meeting host is an Otter accountholder who has integrated

3    their relevant Google Meet, Zoom, or Microsoft Teams accounts with Otter, an Otter

4    Notetaker may join the meeting without obtaining the affirmative consent from *any*

5    meeting participant, including the host.[6]

6        21.    Moreover, when default account settings are used, Otter does not send a

7    pre-meeting invitation or notification to obtain consent from meeting participants.

8    Instead, Otter accountholders must toggle this setting "On" for it to apply to pre-

9    scheduled meetings.[7]   Below is a screenshot demonstrating that when default account

10   settings are used, the pre-meeting email notification setting is turned "Off":



---

23   [6] *Id.*

24   [7]    Otter, *Manage your Otter Notetaker Settings*, https://help.otter.ai/hc/en-
25   us/articles/13675989227543-Manage-your-Otter-Notetaker-settings (referring to toggling
     the pre-meeting notification setting "on") (last accessed August 12, 2025); Otter, *Enforce*
26   *pre-meeting        recording        notifications*,        https://help.otter.ai/hc/en-
     us/articles/13353091821591-Enforce-pre-meeting-recording-notifications (indicating that
27   pre-meeting recording notifications must be "turned on" by businesses who subscribe to
     Otter's Enterprise plan) (last accessed August 12, 2025).

**Class Action Complaint**

22.    Moreover, when Otter Notetaker joins a meeting, it does not provide meeting participants with any notice concerning the real-time transmission of their data to Otter or the way in which the company ultimately uses their data.

23.    When Otter Notetaker joins a meeting, it does not provide any notice of, or link to, the Privacy Policy contained on Otter's website.

24.    Otter Notetaker's ability to accurately transcribe conversations depends upon its automatic speech recognition ("ASR") and machine learning models.

25.    An ASR is an AI technology, often a machine learning algorithm, that converts spoken language into written text.

26.    Otter has stated explicitly that it trains its AI models on recordings and transcriptions made using the Otter Notetaker.

27.    In fact, as part of its Privacy Policy, Otter states the following: "We train our proprietary artificial intelligence on de-identified audio recordings.  We also train our technology on transcriptions to provide more accurate services, which may contain Personal Information. We obtain explicit permission (e.g. when you rate the transcript quality and check the box to give Otter.ai and its third-party service provider(s) permission to access the conversation for training and product improvement purposes) for manual review of specific audio recordings to further refine our model training data."[8]

28.    As indicated by Otter's Privacy Policy, Otter does not seek the consent of meeting participants, besides the Otter accountholder, for using audio recordings or conversation transcriptions to train its ASR and machine learning models.

29.    In fact, as part of its Privacy Policy, Otter implores its *accountholders* to "please make sure [*they*] have the necessary permissions from . . . co-workers, friends or other third parties before sharing Personal Information" in the event of an audio

---

[8] Otter, *Privacy Policy* (September 1, 2024), https://otter.ai/privacy-policy (last accessed August 12, 2025).

**Class Action Complaint**

recording.[9]

30.    In effect, Otter tries to shift responsibility, outsourcing its legal obligations to its accountholders, rather than seeking permission and consent from the individuals Otter records, as required by law.

31.    And despite its claim to "de-identify" audio recordings, Otter provides the public no description of what this de-identification process entails.

32.    Upon information and belief, Otter's deidentification process does not remove confidential information or guarantee speaker anonymity.

33.    Scientific research into de-identification of information used to train machine learning models has revealed that even sophisticated de-identification procedures are unreliable.  *See, e.g.*, Atiquer Sakar et al., *De-identification is not enough: a comparison between two de-identified and synthetic clinical notes*, 14 SCI. REP. 29699, 5 (2024) ("We trained a machine learning classifier with de-identified clinical notes. We mounted a membership inference attack on the classifier and found the attack quite successful. This finding has far-reaching privacy implications for membership-sensitive models that use clinical notes in their training.").

34.    The inadequacy of de-identification for conversational data is compounded by Otter's policy of retaining data for an indefinite period.  As stated in Otter's Privacy Policy, "Otter.ai stores all Personal Information for as long as necessary to fulfill the purposes set out in this Policy, or for as long as we are required to do so by law in order to comply with a regulatory obligation."[10]

35.    Taken together, what Otter has done is use its Otter Notetaker meeting assistant to record, transcribe, and utilize the contents of conversations without the Class members' informed consent.

---

[9] *Id.*

[10] *Id.*

36.    Otter designed the Otter Notetaker to record and transcribe real-time virtual meetings and purposefully intended for the data obtained to train its ASR and machine learning models.  As such, when Otter provided the Otter Notetaker service to its accountholders, Otter understood and therefore intended to record the communications of the Class members without their consent.

37.    This purpose and intention is exemplified by the fact that Otter does not engage in best industry practices.  For example, a rival company, Read.ai, permits any conversation participant, including those who do not use Read.ai, to stop recording during a meeting.[11]

38.    The failure of Otter to include such functionality for its own transcription services is thus indicative of its intent to record conversations in the absence of participants' informed consent.

**B.    Plaintiff Brewer's Experience**

39.    Plaintiff Brewer participated in a Zoom meeting on February 24, 2025, where the Otter Notetaker was used by a meeting participant to transcribe the conversation that transpired therein (the "Conversation").

40.    Plaintiff Brewer was not and is not an Otter accountholder.

41.    Plaintiff Brewer was not aware, nor did he have any reason to suspect that Otter, as opposed to the Otter accountholder, would obtain and retain his conversational data.

42.    Nor was Plaintiff Brewer informed that Otter would use his communications to train its ASR and machine learning tools.

43.    Through this process, Otter read and learned, in real time, the contents of Plaintiff Brewer's communications.

---

[11]    Read, *How do I remove or stop Read from joining meetings?*, https://support.read.ai/hc/en-us/articles/23222131547795-How-do-I-remove-or-stop-Read-from-joining-meetings (last accessed August 12, 2025).

44.    Otter did not procure Plaintiff Brewer's prior consent, express or otherwise, to have Otter eavesdrop, record, and use his communications.  Nor did Plaintiff Brewer give his prior consent, express or otherwise, to Otter to allow Otter to wiretap his communications.

45.    Further, Plaintiff Brewer never consented to Otter's use of his communications to train its ASR and machine learning systems.

46.    Plaintiff Brewer has, therefore, had his privacy severely invaded and been exposed to the risk and harmful conditions created by Otter's violations of federal and California law alleged below.

## CLASS ACTION ALLEGATIONS

47.    Under FED. R. CIV. P. 23(b)(2) and (b)(3), Plaintiff Brewer seeks certification of a nationwide class defined as follows (the "Nationwide Class"):

> All individuals, excluding Otter accountholders and meeting hosts who authorized use of the Otter Notetaker, who, from August 15, 2023, through the present, had the contents of their conversations read and learned by Otter using the Otter Notetaker or OtterPilot software.

48.    Under FED. R. CIV. P. 23(b)(2) and (b)(3), Plaintiff Brewer further seeks certification of a California subclass defined as follows (the "California Subclass"):

> All individuals, besides Otter accountholders and meeting hosts who authorized use of the Otter Notetaker, who, from August 15, 2021, through the present, while participating in a meeting hosted in California and/or while they were located in California, had the contents of their conversations read and learned by Otter using the Otter Notetaker or OtterPilot software.

49.    The Nationwide Class and California Subclass shall be collectively referred to as the "Class."

50.    Excluded from the Class are Otter's employees, officers, directors, legal

representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

51.    *Numerosity.*  The number of persons within the Class is substantial and believed to amount to thousands of persons.  It is impractical to join each member of the Class as a named Plaintiff.  Further, the size and modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

52.    *Commonality and Predominance.*  This case presents questions of law and fact common to all Class members, which predominate over individualized issues. Those common questions include:

      a.  Whether Otter's practices violate the ECPA;

      b.  Whether Otter's practices violate the CFAA;

      c.  Whether Otter's practices violate CIPA §§ 631 and 632;

      d.  Whether Otter's practices violate the CDAFA;

      e.  Whether Otter's practices violate California's prohibitions against intrusion upon seclusion and conversion;

      f.  Whether Otter's practices violate the UCL;

      g.  Whether Otter sought or obtained consent—express or otherwise—from Plaintiff Brewer and the Class prior to intercepting their communications;

      h.  Whether Plaintiff Brewer and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations;

      i.  Whether Otter should be enjoined from obtaining Plaintiff's and Class members' personal information and communications and be required to destroy all information obtained by virtue of the unlawful data collection.

53. *Typicality.* The claims of the named Plaintiff are typical of the Class, because the named Plaintiff, like all other Class members, had the content of his communications read, learned, analyzed, and/or examined by Otter.

54. *Adequacy of Class Representative.* Plaintiff Brewer is an adequate class representative. He seeks relief for all members of the Class and will put the interests of the Class ahead of his individual interests. Plaintiff Brewer does not have conflicts of interest with any other member of the Class.

55. *Adequacy of Class Counsel.* Plaintiff Brewer has retained experienced counsel who have successfully prosecuted class actions, including privacy class actions, in California courts, as well as in state and federal courts throughout the country.

56. *Superiority and Manageability.* Class-wide adjudication will produce substantial benefits for the Court and for litigants because joinder of all individual Class members is impracticable and inefficient, particularly when compared to the relatively small amount-in-controversy for most individual Class members. Moreover, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications. As a result, class-wide adjudication presents fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

57. *Injunctive or Declaratory Relief.* Otter's acts or omissions giving rise to the invasion of the Plaintiff's privacy are common to the class. Injunctive relief or declaratory relief that is proper for Plaintiff Brewer will be appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

### Count 1: Electronic Communications Privacy Act of 1986
### 18 U.S.C. § 2510, *et seq.*
### (On Behalf of Plaintiff Brewer and the Nationwide Class)

58. Plaintiff Brewer incorporates by reference paragraphs 1 through 57 as if fully set forth herein.

59.     The Federal Wiretap Act, as amended by the Electronic Communications Privacy Case Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device. 18 U.S.C. § 2511.

60.     18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

61.     Otter's actions in intercepting Plaintiff's and Class members' oral communications while they participated in Google Meet, Zoom, and Microsoft Teams calls was intentional.  Otter is aware that it is intercepting the communications of non-Otter accountholders in these circumstances and has taken no remedial action.

62.     Otter's interceptions of Plaintiff's and Class members' oral communications was done contemporaneously while those communications transpired.

63.     The communications intercepted by Otter included the contents of the Google Meet, Zoom, and Microsoft Teams calls—i.e., the oral and conversational data contained therein.

64.     The transmission of conversational data between Plaintiff Brewer and the Class members on the one hand and the Otter Notetaker/OtterPilot on the other, without authorization, constituted "transfer[s] of signs, signals, writing . . . data [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce[,] and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

65.     The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

      a.      The Otter Notetaker and OtterPilot software;

      b.      Plaintiff Brewer's and Class members' Google Meet, Zoom, Microsoft Teams, and other virtual meeting platforms;

      c.      Plaintiff Brewer's and Class members' computing and mobile devices;

    d.       The servers from which Otter intercepted the Plaintiff Brewer's and Class members' communications;

    e.       Any other tools used to intercept Plaintiff Brewer's and Class members' communications.

66.    Otter was not an authorized party to the communications because Plaintiff Brewer and Class members did not consent to Otter's transcription of their communications; were not aware that Otter itself was in the process of obtaining and retaining Plaintiff Brewer and Class members' communications, including for the improvement of its ASR and machine learning models; and as a result, did not knowingly provide their communications to Otter, as opposed to Otter accountholders and other conversational participants. Otter could not manufacture its own status as a party to Plaintiff Brewer's and Class members' communications with others by deceptively and surreptitiously intercepting those communications.

67.    Plaintiff Brewer and the Class members did not consent to the interception of their communications, as they never had the opportunity to assent to the same.

68.    Moreover, they could not have been said to have even impliedly consented to interception, as they were not fully informed of Otter's role as an active third-party listener and autonomous data harvesting agent, including the use of their data to train Otter's ASR and machine learning models. *Cf. Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014).

69.    Hosts of meetings in which Plaintiffs' participated did not properly consent to the illegal collection of data from other meeting participants to whom no notice or improper notice was given about the recording and/or transmission of data to Otter.

70.    Further, by converting and then using conversational data from Plaintiff Brewer and Class members—without their knowledge, consent, or compensation— to train its ASR and machine learning systems for its own pecuniary gain, Otter engaged in conduct with an unlawful and tortious purpose, supporting additional claims under, *inter alia*, the CFAA and CDAFA, as well as common law claims under California law

for intrusion upon seclusion and conversion.  Otter's tortious purpose falls within the "crime-tort" exception, thus, removing any statutory immunity Otter may otherwise claim under the ECPA.

71.    After intercepting the communications, Otter then used the contents of the communications knowing or having reason to know that such information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a).

72.    As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages to Plaintiff Brewer and Class members; injunctive and declaratory relief; punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Otter in the future, and a reasonable attorney's fee and other litigation costs reasonably incurred.

73.    Plaintiff Brewer and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**Count 2: Computer Fraud and Abuse Act**
**18 U.S.C. § 1030, *et seq.***
**(On Behalf of Plaintiff Brewer and the Nationwide Class)**

74.    Plaintiff Brewer incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75.    The CFAA, enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

76.    The CFAA reflects Congress's judgment that users have a legitimate interest in the confidentiality and privacy of information within their computers.

77.    The CFAA provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

**Class Action Complaint**

78.     Further, the CFAA mandates that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value" 18 U.S.C. § 1030(a)(4).

79.     Plaintiff Brewer and Class members, as individuals, and Otter as a corporation or legal entity, are "persons" within the meaning of the CFAA.  18 U.S.C. § 1030(e)(12).

80.     A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

81.     "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

82.     Otter's use of the Otter Notetaker and OtterPilot constitute access to the Plaintiff Brewer's and Class member's computers, including but not limited to, desktop computers, laptop computers, and mobile devices.

83.     Through the Otter Notetaker and OtterPilot, Otter intentionally accessed Plaintiff Brewer's and Class members' protected computers without their authorization or consent, or in a manner that exceeded Plaintiff Brewer's and Class members' authorization, and obtained information therefrom in contravention of the CFAA.  18 U.S.C. § 1030(a)(2)(C).

84.     Otter's misconduct constitutes a knowing intent to defraud Plaintiff Brewer and the Class members of their personal data and to thereby derive financial gain.  18 U.S.C. § 1030(a)(4).

85.     Plaintiff Brewer and Class members have suffered harm and injury due to Otter's unauthorized access to the communications containing their private and personal information.

86.    A civil action for violation of the CFAA is proper if the conduct involves "loss to1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Because the loss to Plaintiff Brewer and Class members during any one-year period within the relevant timeframe, including the loss of their privacy interest in and control over their personal data, exceeded $5,000 in aggregate, Plaintiff Brewer and the Class are entitled to bring this civil action and are entitled to economic damages, compensatory damages, injunctive, equitable, and all available statutory relief, as well as their reasonable attorney's fees and costs and other relief as permitted by the CFAA. 18 U.S.C. § 1030(g).

87.    Plaintiff Brewer and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**Count 3: California Invasion of Privacy Act**
**CAL. PENAL CODE §§ 630-638**
**(On Behalf of Plaintiff Brewer and the California Subclass)**

88.    Plaintiff Brewer incorporates by reference paragraphs 1 through 87 as if fully set forth herein.

89.    The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

90.    Cal. Penal Code § 631(a) provides that: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner…willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or

communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500)."

91.     California Penal Code § 632(a) provides, in pertinent part: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars . . . ."

92.     At all relevant times, Otter intercepted, recorded, transcribed, and utilized Plaintiff Brewer's and California Class members' communications exchanged with others using platforms such as Google Meet, Zoom, and Microsoft Teams, while those communications were in transit or passing over any wire, line, or cable or were being sent or received from any place in California.

93.     As recounted above, Otter willfully and intentionally intercepted these communications without consent from all parties to the communications.

94.     Otter intended to learn, and did learn, the meaning of the content in the communications it intercepted.

95.     Otter's subsequent "de-identification" process reveals that Otter necessarily became aware of the content of the California Class members' communications as those communications were transmitted to Otter in real-time.

96.     Otter Notetaker and OtterPilot are "machine[s], instrument[s], contrivance[s], or . . . other manner[s]" used to engage in the prohibited conduct at issue

1    here.

2    97.    The following items additionally constitute "machine[s], instrument[s],

3    contrivance[s], or . . . other manner[s]" within the meaning of CIPA:

4        f.    The Plaintiff's and California Class members' Google Meet,

5            Zoom, Microsoft Teams, and other virtual meeting platforms.

6        g.    The Plaintiff's and California Class members' computing and

7            mobile devices.

8        h.    The servers from which Otter intercepted the Plaintiff's and

9            California Class members' communications.

10        i.    Any other tools used to intercept the Plaintiff's and California

11            Class members' communications.

12    98.    Otter is a separate legal entity that offers "'software-as-a-service' and not

13    merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021).

14    Accordingly, Otter was a third party to the Plaintiffs' and Class members' intercepted

15    communications.  *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891,

16    900 (N.D. Cal. 2023).

17    99.    Otter's interception of Plaintiff Brewer's and California Class members'

18    communications during their Google Meet, Zoom, Microsoft Teams, and other meetings

19    originated in and transpired in California.

20    100.    The data collected by Otter constituted "confidential communications" as

21    that term is used in Section 632, because Plaintiff Brewer and California Class

22    members had objectively reasonable expectations of privacy while engaging in private

23    conversations and calls using Google Meet, Zoom, and Microsoft Teams.

24    101.    The violations of CIPA §§ 631 and 632 constitute an invasion of privacy

25    sufficient to confer Article III standing.

26    102.    Pursuant to Cal. Penal Code § 637.2, Plaintiff Brewer and California Class

27    Members have been injured by the violations of CIPA §§ 631 and 632, and each seeks

28    the greater of $5,000 per violation or three times the actual amount of damages, as well

as injunctive relief, for Otter's violations of CIPA §§ 631 and 632.

103.   Plaintiff Brewer and the California Class members also seek such other relief as the Court may deem equitable, legal, and proper.

### Count 4: Comprehensive Computer Data and Fraud Access Act
CAL. PENAL CODE § 502 *et seq.*
**(On Behalf of Plaintiff Brewer and the California Subclass)**

104.   Plaintiff Brewer incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

105.   Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."  Plaintiff Brewer's and California Class members' computers, including desktops, laptops, and smart phone devices are "computers" within the meaning of the statute.

106.   Otter violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using Plaintiff Brewer's and California Class members' data.

107.   Otter was unjustly enriched, by acquiring Plaintiff Brewer's and California Class members' valuable personal information without permission and using that information for Otter's own financial benefit to improve its ASR and machine learning models. Plaintiff Brewer and the California Class members retain a stake in the profits Otter earned from the use of their personal data because, under the circumstances, it is unjust for Otter to retain those profits.

108.   Otter accessed, copied, took, analyzed, and used data from Plaintiff Brewer's and California Class members' computers in and from the State of California, where Otter: (1) has its principal place of business; and (2) used servers that provided

communication links between Plaintiff Brewer's and California Class members' computers and Otter, which allowed Otter to access and obtain Plaintiff Brewer's and California Class members' data. Accordingly, Otter caused the access of Plaintiff Brewer's and California Class members' computers from California, and is therefore deemed to have accessed Plaintiff Brewer's and California Class members' computers in California.

109.   As a direct and proximate result of Otter's unlawful conduct within the meaning of Cal. Penal Code § 502, Otter has caused loss to Plaintiff Brewer and California Class members and has been unjustly enriched in an amount to be proven at trial.

110.   Plaintiff Brewer, on behalf of himself and California Class members, seeks compensatory damages and/or disgorgement in an amount to be proven at trial, and declarative, injunctive, or other equitable relief.

111.   Plaintiff Brewer and California Class members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Otter's violations were willful and, upon information and belief, Otter is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

112.   Plaintiff Brewer and the California Class members are also entitled to recover their reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

113.   Plaintiff Brewer and the California Class members also seek such other relief as the Court may deem equitable, legal, and proper.

### Count 5: Intrusion Upon Seclusion
### (On Behalf of Plaintiff Brewer and the California Subclass)

114.   Plaintiff Brewer incorporates by reference paragraphs 1 through 113 as if fully set forth herein.

115.   Plaintiffs asserting claims for intrusion upon seclusion must plead (1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive

1    to a reasonable person.

2         116.   In carrying out its scheme to track and intercept Plaintiff Brewer's and

3    California Class members' communications, Otter intentionally intruded upon Plaintiff

4    Brewer's and the California Class members' solitude or seclusion in that it effectively

5    placed itself in the middle of conversations to which it was not an authorized party.

6         117.   Otter's interception, transcription, and use of Plaintiff Brewer's and the

7    California Class members' data were not authorized by Plaintiff Brewer and the

8    California Class members.

9         118.   Otter's intentional intrusion into Plaintiff Brewer's and the California Class

10   members' communications and their computing devices was highly offensive to a

11   reasonable person in that they violated federal and state laws designed to protect

12   individual privacy and against theft.

13        119.   The taking of private conversational data from Californians through deceit

14   is highly offensive behavior, particularly where, as here, Plaintiff Brewer and the

15   California Class members were never given an adequate opportunity to opt-out from the

16   interception of their data.

17        120.   Wiretapping, surreptitious, and deceitful recording of communications for

18   undisclosed motives is highly offensive behavior.

19        121.    Plaintiff Brewer and the California Class members have been damaged by

20   Otter's invasion of their privacy and are entitled to reasonable compensation including

21   but not limited to disgorgement of profits related to the unlawful use of their

22   communications for ASR training and machine learning.

23        122.   Plaintiff Brewer and the California Class members also seek such other

24   relief as the Court may deem equitable, legal, and proper.

25

26                         **Count 6: Conversion**
     **(On Behalf of Plaintiff Brewer and the California Subclass)**

27

28        123.   Plaintiff Brewer incorporates by reference paragraphs 1 through 122 as if

---

22

**Class Action Complaint**

fully set forth herein.

124.   Plaintiff Brewer and the California Class members have property interests in their personal conversational data, as well as aspects of their likeness, such as their voice.

125.   Plaintiff Brewer and the California Class members at no time consented to Otter appropriating their conversational and voice data for the purposes of transcription or for using the recordings and transcriptions produced to train Otter's ASR and machine learning systems.

126.   Otter wrongfully disposed of Plaintiff Brewer's and the California Class members' property by causing conversational and voice data to be transmitted between their computers and mobile devices and Otter using the Otter Notetaker and Otter Pilot without their consent and without payment.

127.   As a result of Otter's conversion, Plaintiff Brewer and the California Class members have suffered injury and damages in an amount to be proven at trial.

128.   Plaintiff Brewer and the California Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**Count 7:  California Unfair Competition Law**
**CAL. BUS. PROF. CODE § 17200 *et seq.***
**(On Behalf of Plaintiff Brewer and the California Subclass)**

129.   Plaintiff Brewer incorporates by reference paragraphs 1 through 128 as if fully set forth herein.

130.   The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  By engaging in the aforementioned practices, Otter has violated the UCL.

131.   Otter's "unlawful" acts and practices include its violations of the ECPA, CFAA, CIPA, CDAFA, intrusion upon seclusion, and conversion.

132.   Otter's conduct violated the spirit and letter of these laws, which protect

property, economic and privacy interests, and prohibit the unauthorized interception and collection of private communications and information.

133.   Otter's "unfair" practices include its violation of property, economic and privacy interests protected by the statutes and common law causes of action identified in paragraph 128.   To establish liability under the unfair prong, Plaintiff Brewer and the California Class members need not establish that these provisions were violated, although the claims pleaded herein do.

134.   Plaintiff Brewer and California Class members have suffered an injury-in-fact, including the loss of money and/or property because of Otter's unfair and/or unlawful practices, to wit, the unauthorized disclosure and taking of their personal information and conversational data which has value as demonstrated by its use and value in training Otter's ASR and machine learning systems.

135.   Otter's actions caused damage to and loss of Plaintiff Brewer's and California Class members' property right to control the dissemination and use of their personal information and communications.

136.   Plaintiff Brewer and Class members have suffered harm, not only in the form of diminution of the value of their private and personally identifiable data and content, but also harm for which there is no adequate legal remedy.

137.   Damages cannot return the conversational data that Otter now has at its disposal for its ASR and machine learning purposes, and in turn, a legal remedy is inadequate to ensure the current protection and safety of Plaintiff Brewer's and Class members' conversational data, as well as the protection and safety of such data going forward.  Accordingly, Plaintiff Brewer and Class members seek equitable and injunctive relief, including but not limited to, deletion of the data Otter has unlawfully obtained.

138.   Furthermore, as part of Otter's request for equitable relief, Otter seeks the restitution and disgorgement of unjust profits and revenues Otter reaped from using Plaintiff's and Class members' data to improve its ASR and machine learning systems.

139.    Plaintiff Brewer and the California Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**PRAYER FOR RELIEF**

Plaintiff Brewer, individually and on behalf of all others similarly situated, demands:

a.    certification of the proposed Class;

b.    appointment of Plaintiff Brewer's counsel as class counsel;

c.    actual and punitive damages in an amount to be determined at trial;

d.    a declaration that Otter's conduct was wrongful, unfair, unconscionable and in violation of federal and California law;

e.    an order enjoining Otter's unlawful and unfair conduct;

f.    restitution and disgorgement of all profits Otter wrongfully obtained;

g.    an award to Plaintiff Brewer and the Class of all damages, including attorneys' fees and reimbursement of litigation expenses, recoverable under applicable law; and

h.    such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all applicable claims.

Respectfully submitted,

**Class Action Complaint**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_/s/ Matthew R. Wilson_

MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Jared W. Connors (*pro hac vice* to be filed)
jconnors@meyerwilson.com
Ryne E. Tipton (*pro hac vice* to be filed)
rtipton@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
brian@levinlawpa.com
Brandon T. Grzandziel (*pro hac vice* to be filed)
brandon@levinlawpa.com
2665 South Bayshore Drive, PH2B
Miami, Florida 33133

Jacob Polin (SBN 311203)
jacob@levinlawpa.com
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050

_Attorneys for Plaintiff Brewer and the Proposed Class_

**Class Action Complaint**