CLARK HILL PLC
Kraig D. Jennett (CA Bar No. 261019)
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 772-0913
Facsimile: (202) 772-0919
Email: kjennett@clarkhill.com

CLARK HILL PLC
Peter T. Berk (*Pro Hac Vice forthcoming*)
IL ARDC No.: 6242515
130 E. Randolph, Suite 3900
Chicago, IL 60601
Telephone: (312) 701-6870
Facsimile: (312) 985-5999
pberk@clarkhill.com

Attorneys for Defendant Otter.ai, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose Division

| | |
|---|---|
| **IN RE: OTTER.AI PRIVACY LITIGATION.** | Case No. 5:25-cv-06911-EKL<br>Hearing Date: May 20, 2026<br>Time: 10:00 am.<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Eumi K. Lee<br><br>Trial Date: |

### NOTICE OF MOTION AND COMBINED RULE 12 MOTION

PLEASE TAKE NOTICE that on May 20, 2026 at 10:00 am, or as soon thereafter as the matter may be heard, before the Honorable Eumi K. Lee, in Courtroom 7 of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Defendant Otter.ai, Inc. ("Otter") moves to dismiss the Consolidated Class Action Complaint under Rules 12(b)(1) and 12(b)(6).

1    Defendant seeks an order dismissing Plaintiff's Consolidated Class Action Complaint in

2    its entirety for lack of standing and failure to state a claim upon which relief can be granted. This

3    Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all

4    pleadings and papers on file, and such further argument as the Court may permit.

5    Counsel for Otter certifies that the parties complied with the meet-and-confer required

6    pursuant to Section VIII.A. this Court's Civil Standing Order.

7

8    Dated:    January 20, 2026                    CLARK HILL PLC

9                                                 By:  */s Kraig Jennett*
                                                        Kraig Jennett
10

11                                               CLARK HILL PLC
                                                 Kraig D. Jennett (CA Bar No. 261019)
12                                               1001 Pennsylvania Avenue, N.W.
                                                 Suite 1300 South
13                                               Washington, DC 20004
                                                 Telephone: (202) 772-0913
14                                               Facsimile: (202) 772-0919
                                                 Email: kjennett@clarkhill.com
15

16                                               CLARK HILL PLC
                                                 Peter T. Berk (*Pro Hac Vice forthcoming*)
17                                               IL ARDC No.: 6242515
                                                 130 E. Randolph, Suite 3900
18                                               Chicago, IL 60601
                                                 Telephone: (312) 701-6870
19                                               Facsimile: (312) 985-5999
                                                 pberk@clarkhill.com
20

21                                               Attorneys for Defendant Otter.ai, Inc.

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CLARK HILL PLC
Kraig D. Jennett (CA Bar No. 261019)
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 772-0913
Facsimile: (202) 772-0919
Email: kjennett@clarkhill.com

CLARK HILL PLC
Peter T. Berk (*Pro Hac Vice forthcoming*)
IL ARDC No.: 6242515
130 E. Randolph, Suite 3900
Chicago, IL 60601
Telephone: (312) 701-6870
Facsimile: (312) 985-5999
pberk@clarkhill.com

Attorneys for Defendant Otter.ai, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose Division

| | |
|---|---|
| **IN RE: OTTER.AI PRIVACY LITIGATION.** | Case No. 5:25-cv-06911-EKL<br>Hearing Date: May 20, 2026<br>Time: 10:00 am.<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br>Judge:      Eumi K. Lee<br><br>Trial Date: |

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................3

   I.     PLAINTIFFS LACK ARTICLE III STANDING ..................................................3

         A.     Applicable Standards under Rule 12(b)(1) ...............................................3

         B.     Plaintiffs Have Not Sufficiently Alleged An Injury in Fact ......................5

   II.    PLAINTIFFS FAIL TO SUFFICIENTLY STATE THEIR CLAIMS .......................................................................................................7

         A.     Applicable Standard under Rule 12(b)(6)..................................................7

         B.     Plaintiffs Fail to Plead a Violation of ECPA (Count 1)............................7

              1.     No Plausible "Interception" "In Transit" ...........................................7

              2.     The Party Exception Bars the Claim.................................................8

         C.     Plaintiffs' Computer Fraud and Abuse Act Fails (Count 2) .......................9

         D.     Plaintiffs Have Not Sufficiently Alleged Intrusion Upon Seclusion (Count 3)....................................................................................12

              1.     California ......................................................................................12

               2.     Illinois .........................................................................................14

               3.     Washington ...................................................................................14

         E.     Plaintiffs Have Not Sufficiently Alleged Conversion (Count 4) ...................................................................................................15

         F.     Plaintiffs' Unjust Enrichment/Restitution Claim Fails (Count 5) ...................................................................................................16

         G.     Plaintiffs Are Not Entitled To A Declaratory Judgment (Count 6) ...................................................................................................17

         H.     Plaintiffs' Cannot Allege Trespass to Chattels (Count 7).........................17

         I.     Plaintiffs' Claims Under CIPA § 631(a) and 632 Fail (Count 8) ...................................................................................................19

               1.     Section 631.....................................................................................19

                      a.     Clause One Does Not Apply................................................19

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF N

          b.      Plaintiffs Cannot Allege a Claim Under Clause Two ..................................................................19

          c.      Plaintiffs Have Not Alleged A Clause 3 Violation ..................................................................20

          d.      Plaintiffs Have Not Made, And Cannot Make, A Claim Under Clause 4 ........................................20

     2.      Section 632 ..................................................................21

J.      The Notetaker Is Not Primarily Or Exclusively Designed For Eavesdropping under CIPA §635 (Count 9) ..................................21

K.      The Notetaker Is Not a Pen Register Or Trap And Trace Device (Count 10) ..............................................................22

L.      Plaintiffs' Comprehensive Computer Data and Fraud Access Act Claim Fails ..............................................................24

M.     Plaintiffs' Larceny/Receipt of Stolen Property Claim Fails (Count 12) ..................................................................26

N.      Plaintiffs Have Not Sufficiently Pled Invasion of Privacy Under Cal. Const. Art. I, § I (Count 13) ....................................27

O.      Plaintiffs Cannot Plead A UCL Violation (Count 14) ..............................28

P.      Plaintiffs' Cannot Allege Violations Of BIPA (Counts 15 and 16) ..................................................................29

     1.      BIPA Does Not Apply Extraterritorially .......................................29

     2.      Otter Does Not Collect Biometric Identifiers Or Biometric Information ..................................................30

Q.      Plaintiff Dolan's Washington Wiretap Act Claim Is Insufficient (Count 17) ..............................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) .................................................................7, 22

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ........................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................7, 10

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .........................................................................16

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill.2d 100 (Ill. 2005)...............................................................................29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................7

*Best Carpet Values, Inc. v. Google, LLC*,
   90 F.4th 962 (9th Cir. 2024) ...........................................................................18

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020)............................................................................6

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ...........................................................26

*Campana v. Nuance Comms, Inc.*,
   2024 WL 2809838 (N.D. Ill. March 8, 2024) .........................................30

*CommSolvers LLC v. Wieland N. Am., Inc.*,
   No. 3:21-CV-01234-NJR, 2025 WL 786330 (S.D. Ill. Mar. 12, 2025)....................9

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) .............................................................11

*Daichnendt v. CVS Pharmacy, Inc.*,
   2022 WL 17404488 (N.D. Ill. Dec. 2, 2022).............................................31

*Doe I v. Google LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ...............................16, 18, 19, 25, 26, 27

*Dresser-Rand Co. v. Jones*,
   957 F. Supp. 2d 610 (E.D. Pa. 2013) ..........................................................9, 10

*Esparza v. Gen Digital, Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ...........................................................20

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ...........................................................21

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ...................................................................19

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) .....26

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d at 601 ......................................................................................................27

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (*per curiam*) ............................................................7

*Fish v. Tesla, Inc.*,
2022 WL 1552137 (C.D. Cal. May 12, 2022) .........................................................11

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 41 P.3d 575 (2002) .....................................................................21

*Food Drug Admin. v. Alliance for Hippocratic Medicine*,
602 U.S. 467 (2024) ................................................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ................................................................................................3

*G.T. v. Samsung Elecs. Am., Inc.*,
742 F.Supp.3d 788 (N.D. Ill. 2024) .......................................................................31

*Gaos v. Google Inc.*,
2012 WL 1094646 (N.D. Cal. Mar. 29, 2012) ..........................................................4

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..............................................................20, 21

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................19

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL
2206454 (9th Cir. May 16, 2024) ...........................................................................15

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ...........................................................................................27

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Matter of Hopper*,
   4 Wash. App. 2d 838, 849, 424 P.3d 228 (2018) ..................................................32

*Intel Corp. v. Hamidi*,
   30 Cal. 4th 1342 (2003) ...........................................................................18, 19

*In re iPhone Application Litigation*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................16, 18, 26

*Jacobson v. CBS Broad., Inc.*,
   19 N.E.3d 1165 (2014)...............................................................................14

*Khamooshi v. Politico LLC*,
   2025 WL1408896 (N.D. Cal. May 13, 2025) .............................................................5

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) (Wise,
   J.).....................................................................................................23

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
   No. 14-CV-02737-BLF, 2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) ...................................9

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) .......................................................................7, 8

*Korea Supply Co. v. Lockheed Martin Corp.*
   (2003) 29 Cal.4th 1134 ..............................................................................28

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) .......................................................................16

*Lakes v. Ubisoft, Inc.*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal filed* (May 2, 2025) .................................8

*Lau v. Gen Digital Inc.*,
   No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023), *aff'd
   sub nom. Karwowski v. Gen Digital, Inc.*, No. 24-7213, 2025 WL 3002610
   (9th Cir. Oct. 27, 2025)...........................................................................26, 27

*Licea v. Am. Eagle Outfitters, Inc.*,
   2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ...........................................................19

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..............................................................20

*Lightoller v. JetBlue Airways Corp.*,
   2023 WL 3963823 (S.D. Cal. June 12, 2023)............................................................5

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................12, 13, 27

*In re Marriage of Langham & Kolde,*
  153 Wash. 2d 553, 106 P.3d 212 (2005)..................................................................15

*Martin v. Sephora USA, Inc.,*
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .........................................................20

*McClung v. AddShopper, Inc.,*
  No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024)......................26

*McGovern v. Amazon Web Servs, Inc.,*
  2021 WL 4502089 (D. Del. Sept. 30, 2021)........................................................29, 30

*Mitchener v. Curiositystream, Inc.,*
  2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ...........................................................23

*Orbit One Commc'ns, Inc. v. Numerex Corp.,*
  692 F.Supp.2d 373 (S.D.N.Y. 2010)........................................................................10

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985).................................................................................................12

*Planned Parenthood Fed'n of Am., Inc. v. Newman,*
  51 F.4th 1125 (9th Cir. 2022) ....................................................................................8

*Popa v. Microsoft Corp.,*
  153 F.4th 784 (9th Cir. 2025)..................................................................................4, 6

*Price v. Headspace, Inc.,*
  No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 01, 2025) .....................23

*Prudential Home Mortg. Co. v. Super. Ct.*
  (1998) 66 Cal.App.4th 1236, *as modified on denial of reh'g* (Oct. 29, 1998).........28

*Rincon Band of Luiseno Mission Indians etc. v. Flynt*
  (2021) 70 Cal.App.5th 1059 ....................................................................................29

*Sanchez v. Cars.com Inc.,*
  No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........................23

*Shamrock Foods Co. v. Gast,*
  535 F.Supp.2d 962 (D. Ariz. 2008) ...........................................................................9

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) .............................................................................16, 17

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016).............................................................................................3, 4, 5

*State v. Modica,*
  164 Wash. 2d 83, 186 P.3d 1062 (2008)..................................................................32

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)............................................................................................................3

*Sussman v. AM. Broad. Cos.*,
    186 F.3d 1200 (9th Cir. 1999)........................................................................................8

*Swarts v. The Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ...............................................................19, 20

*Tavernetti v. Superior Ct.*,
    22 Cal. 3d 187 (1978)....................................................................................................21

*Thomasson v. GC Servs. Ltd. P'ship*,
    321 F. App'x 557 (9th Cir. 2008) ................................................................................21

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)....................................................................................................3, 4

*Tsering v. Meta Platforms, Inc.*,
    No. 25-CV-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ....................25

*U.S. v. McTiernan*,
    695 F.3d 882 (9th Cir. 2012) .........................................................................................8

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) .........................................................................................9

*United States v. Texas*,
    599 U.S. 670 (2023)........................................................................................................3

*Valenzuela v. Keurig Green Mountain, Inc.*,
    2023 WL 6609351 (N. D. Cal. Oct. 10, 2023)........................................................4, 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) .......................................................................20

*Van Buren v. United States*,
    593 U.S. 374 (2021)......................................................................................................10

*Vance v. Google, LLC*,
    2024 WL 1141007 (N.D. Cal. March 15, 2024) ......................................................30

*Varnado v. Midland Funding LLC*,
    43 F. Supp. 3d 985 (N.D. Cal. 2014) .........................................................................12

*Weston v. Lefiti*,
    2023 WL 8458249 (S.D. Cal. Dec. 5, 2023), *aff'd*, 2024 WL 4579237 (9th Cir.
    Oct. 25, 2024) .................................................................................................................9

CASE NO:5:25-CV-06911-EKL
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................................3

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023)........................................................................3, 5, 6

*Z's IT Consulting Servs., Inc. v. Hunt L. Grp., LLC*,
   2024 IL App (3d) 230333, appeal allowed, 256 N.E.3d 992 (Ill. 2025)..................15

*Zellmer v. Meta Platforms, Inc.*,
   104 F.4th 1117 (9th Cir. 2024)...........................................................................6, 31

**Statutes**

740 ILCS 14/10..............................................................................................................31

740 ILCS 14/15(a) (Illinois Biometric Information Privacy Act (BIPA)) ......................6

18 U.S.C. § 1030 (Computer Fraud and Abuse Act (CFAA))..................8, 9, 10, 11, 24

18 U.S.C. § 1030(a)(2)(c) ..............................................................................................9

18 U.S.C. § 1030(a)(4)...............................................................................................9, 11

18 U.S.C. §1030(e)(11).................................................................................................11

18 U.S.C. § 2511(1)(a)...............................................................................................7, 8

18 U.S.C. § 2511(1)(c)-(d) ............................................................................................8

18 U.S.C. § 2511(2)(d) ..................................................................................................8

18 U.S.C. § 2510-2522 (Eletronic Communications Privacy Act (ECPA))..............7, 8

Cal. Bus. & Prof. Code § 17200, *et seq.* ...............................................................28, 29

Cal. Bus. & Prof. Code § 17204 ...................................................................................29

Cal. Penal Code § 484....................................................................................................26

Cal. Penal Code § 496....................................................................................................26

Cal. Penal Code § 496(a)................................................................................................26

Cal. Penal Code § 496(c)................................................................................................26

Cal. Penal Code § 502 (California Comprehensive Computer Data Acess and
   Fraud Act (CDAFA))..........................................................................................8, 24, 26

Cal. Penal Code § 502(b)(1) ..........................................................................................24

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Cal. Penal Code § 502(c)(2)..........................................................................................24

Cal. Penal Code § 502(e)..............................................................................................24

Cal. Penal Code § 502(e)(1).........................................................................................24

Cal. Penal Code. § 631.......................................................................................11, 19, 21

Cal. Penal Code §631(a) ..........................................................................4, 19, 20, 21, 23

Cal. Penal Code § 631(a)(4).........................................................................................20

Cal Penal Code §632....................................................................................................21

Cal. Penal Code §635.............................................................................................21, 22

Cal. Penal Code § 638.50.......................................................................................22, 23

Cal. Penal Code § 638.50(b)-(c) ..................................................................................22

Cal. Penal Code § 638.50(c) ........................................................................................23

Cal. Penal Code § 638.51.................................................................................22, 23, 24

Cal. Penal Code § 638.51(a)-(b) ..................................................................................22

Comprehensive Computer Data and Fraud Access Act.................................................24

Wash. Rev. Code Ann. § 9.73 (Washington Wiretap Act) ...........................................31

Wash. Rev. Code Ann. § 9.73.030(1) ..........................................................................32

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................3, 7

Fed. R. Civ. P. 12(b)(6)................................................................................................7

**Other Authorities**

Cal. Const. Art. I, § I....................................................................................................27

California Constitution............................................................................................12, 27

U.S. Const. art. III...............................................................................2, 3, 4, 5, 7, 21

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## INTRODUCTION

This case presents the next iteration of lawsuits claiming privacy violations for the use of very common technologies – this time, meeting notetaker technology. Plaintiffs claim that Otter.ai, Inc. ("Otter") and its notetaker product violated various statutes and committed various common law torts. However, like many of the cases that came before it, this case suffers from a significant flaw – Plaintiffs fail to allege sufficient (if any) facts about the meetings they were allegedly involved with where the Otter Notetaker was utilized. Plaintiffs only describe these meetings in general and conclusory terms (if at all), and hope that general allegations and anonymous complaints posted on message boards by non-parties will suffice to meet Plaintiffs' burdens on this motion to dismiss. That attempt should fail.

First, Plaintiffs fail to plead a sufficient injury to establish standing under Article III of the United States Constitution. Plaintiffs appear to rely solely on the alleged violations of statutes to support their standing. But the law in this Circuit requires more than simply alleging a statutory violation.

Second, even if some or all of the Plaintiffs could establish standing, they have not, and Otter believes cannot, they still did not sufficiently allege facts to support their claims. Instead, Plaintiffs bring 17 different counts against Otter, apparently hoping that given the sheer number of claims will overwhelm reason (indeed merely summarizing the arguments against these counts here would take many pages) and something will survive. Plaintiffs' hope is wrong.

## FACTS

Otter allows its users to have Otter's Notetaker product attend meetings as a participant (Dkt. 35, ¶¶ 4, 41 (Image 1), 44 ("Otter Notetaker joins the meeting"), 49 (same), 50 (same)) and provide the user, and potentially others, transcription of the meeting as well as other benefits. *Id.* at ¶ 8.

Plaintiffs claim that they each are not registered users of Otter, and attended meetings in which the Otter Notetaker was present and recorded the meetings. *Id.* at ¶¶ 135, 137, 146, 147, 158, 170, 183, 196, 205, 212, 213. Yet Plaintiffs' descriptions of these meetings – including

whether they even spoke and, if so, what information they shared – are conclusory, vague, and lack significant details.

Plaintiffs provide many allegations about Otter and how various of its notetaker products work, anonymous complaints by non-parties, and general statements about the value of information and privacy. But Plaintiffs never tie any of these general allegations to their experience – such as which version of the Notetaker product was used, what Otter user had the Notetaker present, and what information they provided that was allegedly improperly recorded.

Plaintiffs' sparse allegations are insufficient, and their claims should be dismissed.

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING

#### A.    Applicable Standards under Rule 12(b)(1)

Article III standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). A "general legal, moral, ideological, or policy objection" does not create Article III standing. *Food Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 467, 381 (2024). Under Rule 12(b)(1), a court must dismiss claims where a plaintiff has failed to establish standing under Article III of the U.S. Constitution. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Conclusory allegations are insufficient as Plaintiff is required to "clearly . . . allege facts demonstrating each element." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023)(quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Further, even though the present action is brought as a putative class action, Plaintiff must "allege and show that [she] personally [has] been injured." *Id.* (internal quotations and citations omitted).

To establish standing under Article III, a plaintiff must demonstrate, among other things, that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical …." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *see Winsor,* 62 F.4th at 523 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). In data privacy claims, courts have only recognized standing

1   when plaintiffs can demonstrate that their "injuries are sufficiently particularized." *See, e.g., Gaos*
2   *v. Google Inc.*, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012).

3          Moreover, a "bare procedural violation" of a statute is not sufficient. *Spokeo, Inc. v. Robins*,
4   578 U.S. 330, 341 (2016). As the United States Supreme Court stated, "this Court has rejected the
5   proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a
6   statute grants a person a statutory right and purports to authorize that person to sue to vindicate
7   that right." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). As the *TransUnion*
8   court further explained, "For standing purposes . . . an important difference exists between (i) a
9   plaintiff's statutory cause of action to sue a defendant over the defendant's violation of . . . law,
10  and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of . . . law."
11  *TransUnion*, 594 U.S. at 426-27. Were this not the case, legislatures could "authorize virtually any
12  citizen to bring a statutory damages suit against virtually any defendant who violated virtually any
13  . . . law." *Id.* at 428. Instead, "[o]nly those plaintiffs who have been "*concretely harmed* by a
14  defendant's statutory violation may sue that private defendant over that violation in federal court."
15  *Id.* at 427 (emphasis in original).

16         The Ninth Circuit recently reinforced the requirements of *TransUnion*. In *Popa v.*
17  *Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), the Ninth Circuit stated that to perform the proper
18  analysis under *TransUnion,* the Court is required to "look to the *specific* underlying harm
19  experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort. At base—and
20  all we need to acknowledge to decide this case—is that *TransUnion* requires a court to assess
21  whether an individual plaintiff has suffered a harm that has traditionally been actionable in our
22  nation's legal system." *Id.* at *791 (emphasis original).

23         Federal courts in this circuit have recognized the need for a concrete injury. In *Valenzuela*
24  *v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, *1 (N. D. Cal. Oct. 10, 2023), the court issued
25  an Order to Show Cause "as to whether Plaintiff had sufficiently alleged Article III standing."
26  When the plaintiff relied on her claim of a violation of CIPA Section 631(a) the court rejected that
27  argument: "The question the Court asked is not whether she states a claim under CIPA, but whether
28  she has sufficiently alleged Article III standing. 'Article III standing requires a concrete injury

even in the context of a statutory violation.'" *Id.* at *2 *quoting Spokeo*, 578 U.S. 341; *see also Khamooshi v. Politico LLC*, 2025 WL1408896, *5-6 (N.D. Cal. May 13, 2025) (no standing where plaintiff only alleged disclosure of non-private information voluntarily shared with defendant; *Lightoller v. JetBlue Airways Corp.*, 2023 WL 3963823, at *3–4 (S.D. Cal. June 12, 2023) (no Article III standing for CIPA claim where plaintiff did "not allege that she disclosed any personal information when she visited the website."). This is especially true where the complaint fails to identify any specific sensitive information that any Plaintiff actually disclosed.

### B.    Plaintiffs Have Not Sufficiently Alleged An Injury in Fact

Here, each of the Plaintiffs fail to sufficiently allege standing. Presumably Plaintiffs will claim that their allegations mirror common law torts involving invasion of privacy (although which one remains unclear). Yet none of the Plaintiffs provide any specifics or sufficient detail about the actual information allegedly shared that would suffice to their burden.

Plaintiff Brewer does not provide any detail about his conversation other than a date when it occurred. Absent more detail (including about what information he shared), he has failed to allege any harm sufficient to meet Article III standing requirements.

Plaintiff Ryan provides only slightly more information by conclusorily alleging that her conversations involved "sensitive discussions." But such conclusory allegations, without any supporting facts, are insufficient to carry her burden. *Winsor,* 62 F.4th at 523.

The Walkers both allege that they communicated with a financial professional. Dkt. 35, ¶¶ 171, 184. But both then conclusorily state that merely because the conversation was with a financial professional "the call involved deeply personal and private financial information." *Id.* ¶¶ 171, 184. They provide absolutely no facts to support this. *Winsor,* 62 F.4th at 523 (conclusory allegations insufficient). Without more, it is unclear what information they discussed (financial or otherwise), if they shared any information at all, and whether that specific information is sufficiently private to satisfy their Article III standing requirements. Moreover, the Walkers do not allege any additional details about the conversation that could support a privacy claim.

Plaintiff Winston does not even provide a specific date she participated in the meetings at issue. Dkt. 35, ¶ 196. Beyond that, she only provides a litany of numerous general topics that may

have been involved in one or more of potentially multiple meetings. *Id.* ¶197. She provides no factual details to show her conclusions that the information shared was "sensitive," "confidential" or otherwise fit within the relevant privacy torts, or that any of the information was even shared by her. She also does not state any specifics about these alleged meetings, including how many other colleagues were on the call that one of them intentionally recorded. Her conclusions, without any factual details are insufficient to establish standing. *Winsor,* 62 F.4th at 523.

Plaintiff Dolan only states that he attended meetings about "professional opportunities." Dkt. 35, ¶ 213. He provides no details that would indicate that these meetings involved sufficiently private matters, or that he even shared any information, and no details about who the discussion was with, whether he was located in a private area, whether others were on the call, etc. Absent such factual details, Plaintiff Dolan cannot establish standing. *Winsor,* 62 F.4th at 523.

While Plaintiffs attempt to overcompensate for their lack of facts with numerous allegations containing generalized assertions and anonymous comments from alleged other users (*e.g.,* Dkt. 35, ¶¶ 40-44, 47-57, 62-63, Image 4, 94), those do not obviate Plaintiffs' pleading burden. Moreover, Plaintiffs never link those generalizations to this case, or *any* facts specific to their experiences. As the Ninth Circuit recently explained, allegations "pitched at a high level of generality" without "allegations plausibly linking" any potential harms to the plaintiffs do not establish concreteness. *Popa*, 2025 WL 2448824 at *6, n.5.

Plaintiffs also lack standing for Counts 15 and 16 under BIPA. Count 15 seeks recovery under BIPA Section 15(a) for Otter's alleged failure to publish a "written policy, made available to the public," as required by BIPA. The Ninth Circuit holds that Plaintiffs bringing these claims lack standing as the requirement to publish a policy "is a duty owed not to any particular person, but to the 'public generally.'" *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1126-27 (9th Cir. 2024), *citing Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Further, as explained more fully below, no Plaintiff provides factual allegations that Otter actually received their biometric information or that it somehow identified them.

Because the Complaint does not plausibly allege facts to support a showing of concrete and particularized injury to any Plaintiff caused by Otter, Plaintiffs lack Article III standing, and the claims should be dismissed under Rule 12(b)(1).

## II.    PLAINTIFFS FAIL TO SUFFICIENTLY STATE THEIR CLAIMS

### A.    Applicable Standard under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556) (emphasis added).

Although the Court must accept all well-pleaded facts as true for purposes of a Rule 12(b)(6) motion, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Iqbal*, 556 U.S. 677-79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.    Plaintiffs Fail to Plead a Violation of ECPA (Count 1)

Plaintiffs' ECPA count hinges on the conclusory premise that Defendant "intercepted" their communication and then used the contents of those communications. Dkt. 35, Count 1. Plaintiff's allegations fail for at least two independent reasons.

#### 1.    No Plausible "Interception" "In Transit"

To state a § 2511(1)(a) claim, Plaintiffs must plausibly allege an "interception," i.e., an acquisition of contents contemporaneous with transmission, not access to data before or after transmission. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (interception requires acquisition "contemporaneous with transmission").

Here, the Complaint fails to plead concrete facts regarding how, when, or by what mechanism any "contents" were captured during transmission. Instead, it repeats labels such as "in

real time," and "in transit" without sufficient factual detail. Dkt. 35, ¶¶ 41, 50, 139, 151, 163, 175, 188, 202, 217. Such threadbare assertions merely recite an element and are insufficient. *See, e.g.*, *Konop*, 302 F.3d at 878 (rejecting non-contemporaneous theory). Because Plaintiffs have not plausibly alleged a contemporaneous acquisition, the § 2511(1)(a) claim fails—and with it the derivative "disclosure" and "use" claims under § 2511(1)(c)–(d), which require that information be "obtained through" an unlawful interception.

### 2.     The Party Exception Bars the Claim

Additionally, ECPA expressly permits a party to the communication to consent to interception. The only exception is if the communication is intercepted for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). According to Plaintiffs' allegations, Otter joins the relevant communications as a participant. Dkt. 35, ¶¶ 4, 41 (Image 1), 44 ("Otter Notetaker joins the meeting"), 49 (same), 50 (same). Because Otter is a "party" to the conversations, in order to state an ECPA claim, Plaintiffs were required to allege that the "communication was intercepted for the purpose of committing [a] criminal or tortious act . . .." 18 U.S.C. § 2511(2)(d). More specifically, Plaintiffs were required to allege that Otter's "purpose for the interception – its intended use – was criminal and tortious." *U.S. v. McTiernan*, 695 F.3d 882, 889 (9th Cir. 2012)(quoting *Sussman v. AM. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999)); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022).

But Plaintiffs affirmatively allege that Otter's gathering of information is for commercial purposes including providing transcripts to users who are using the Notetaker product for such transcription (Dkt. 35, ¶¶ 34, 39, 40), improving Otter's products such as training speech recognition (*id.* at ¶ 8, 70), and advertising (*id.* at ¶ 8), among other commercial uses. *Id.* (listing uses). Plaintiffs therefore fail to satisfy the crime-tort exception. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (crime-tort exception did not apply where plaintiff alleged the "purpose of the interception was . . . to make money."), *appeal filed* (May 2, 2025). Plaintiffs' conclusory allegations that Otter's purpose was to violate CFAA, CDAFA, and common law torts (Dkt. 35, ¶ 255) are insufficient as they never allege any *facts* to show this was Otter's purpose at

the time of the alleged interception. This is especially true where, as explained herein, those claims are insufficiently pled. *Weston v. Lefiti*, 2023 WL 8458249, at *4 (S.D. Cal. Dec. 5, 2023), *aff'd*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024).

## C.    Plaintiffs' Computer Fraud and Abuse Act Fails (Count 2)

Plaintiff's CFAA claim fails as a matter of law because Plaintiffs failed to and cannot allege that: (1) Otter Notetaker accessed Plaintiffs' computers; (2) Otter did so with intent to defraud Plaintiffs; and (3) Plaintiffs suffered damages in excess of $5,000.

The CFAA is "an anti-hacking statute." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012); *see also Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737-BLF, 2015 WL 1289984, at *3 (N.D. Cal. Mar. 20, 2015), *Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962, 965 (D. Ariz. 2008) ("The general purpose of the CFAA was to create a cause of action against computer hackers."). Specifically, the CFAA makes it unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(c). The CFAA further mandates that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value" 18 U.S.C. § 1030(a)(4).

First, Plaintiffs failed to, and cannot, allege that Otter accessed Plaintiffs' computers or devices. CFAA's plain language makes clear that there can be no liability when, like here, the defendant did not access Plaintiffs' computers. Unauthorized access to a computer or device requires "some affirmative step by the defendant—i.e., an 'interaction' between the defendant and the computer." *See, e.g.*, *CommSolvers LLC v. Wieland N. Am., Inc.*, No. 3:21-CV-01234-NJR, 2025 WL 786330, at *17 (S.D. Ill. Mar. 12, 2025) (quoting *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013)). "[O]ne who "accesses" a protected computer under the CFAA gains access to its electronically stored contents by way of an affirmative act. Or stated more plainly, the defendant has to do something with the computer before CFAA liability attaches." *CommSolvers*, 2025 WL 786330, at *17; *see also Nosal*, 930 F. Supp. 2d at 1063 ("The common definition of the word "access" encompasses not only the moment of entry, but also the ongoing

use of a computer system."); *compare Dresser-Rand*, 957 F. Supp. 2d at 615 (defendant did not "access" protected computer where he had no direct "interaction" with it and only viewed contents from protected computer on his own device after they were sent to him).

Here, Plaintiffs' only attempt to allege access to their computers appears in Paragraphs 267 and 268 where they merely assert, without facts, that Otter's use of the Otter Notetaker "constitutes" access to Plaintiffs' systems. Dkt. 35, ¶¶ 267-68. But they nowhere explain how or to what extent Otter Notetaker takes an affirmative step to interact with their computers. Plaintiffs' conclusory allegations of access under CFAA are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[1]

The reality is that there are no factual allegations showing how or to what extent Otter Notetaker accessed Plaintiffs' computers. Indeed, Plaintiffs' allegations show the opposite—that Otter Notetaker is deployed in virtual meeting platforms and "engages in real-time transcription of Google Meet, Zoom, and Microsoft Teams meetings for Otter Accountholders and other users." Dkt. 35, ¶ 2. Plaintiffs allege that Otter collects names, emails and contact details "from platforms like Zoom, Microsoft Teams, Google calendar, and Outlook calendar …." *Id*. ¶ 10. Plaintiffs devote 100 paragraphs incorrectly explaining how Otter Notetaker operates, but nowhere allege that Otter Notetaker accesses *Plaintiffs' computers, devices or systems. See* Dkt. 35, ¶¶ 34-134. Nor do Plaintiffs allege any access to their own computers when describing their individual experiences with Otter. *Id*. at ¶¶ 135-223. This is no accident. Otter does not access Plaintiffs' computers, and Plaintiffs cannot allege otherwise.

The crux of Plaintiffs' allegations is that Otter Notetaker improperly uses information *that Plaintiffs provide to Otter* – not information Otter improperly accesses on Plaintiffs' computers. Even if true, such unauthorized use does not violate the CFAA. *See, e.g.*, *Orbit One Commc'ns*,

---

[1] Otter likewise cannot be liable for "exceeding authorized access" where there was no access to begin with. *See Van Buren v. United States*, 593 U.S. 374, 396, (2021) ("an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him.").

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Inc. v. Numerex Corp.*, 692 F.Supp.2d 373, 385 (S.D.N.Y. 2010)("The plain language of the CFAA supports a narrow reading. The CFAA expressly prohibits improper 'access' of computer information. It does not prohibit misuse or misappropriation."). Absent improper access, there can be no liability under CFAA.

Plaintiffs' CFAA claim fails for the additional reason that Plaintiffs failed to allege that Otter acted with "intent to defraud" Plaintiffs. The CFAA contains a *mens rea* element that mandates it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value" 18 U.S.C. § 1030(a)(4). Plaintiffs nowhere allege that Otter engaged in a concerted plan or scheme to deprive them of any personal information exchanged in the allegedly recorded meetings. In fact, the whole purpose of Otter Notetaker, as Plaintiffs allege, is to transcribe meetings and provide the information back to the users. The Complaint is completely devoid of any particular allegations sounding in fraud.

Finally, Plaintiffs' CFAA claim fails because the loss of value in personal information is not a recoverable loss under the CFAA and Plaintiffs' Complaint contains no factual allegations regarding Plaintiffs' purported losses. "The CFAA supplies a private right of action under very limited circumstances. …. Relevant here, Plaintiffs must allege 'loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value.' *Fish v. Tesla, Inc.*, 2022 WL 1552137, at *8 (C.D. Cal. May 12, 2022). "The CFAA defines 'loss' as 'any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.'" *Id*. (citing 18 U.S.C. §1030(e)(11)). "The Ninth Circuit has explained that this 'is a narrow conception of "loss" and is limited by 'the specific terms that surround it.'" *Fish*, 2022 WL 1552137, at *8 (quoting *Andrews v. Sirius XM Radio Inc*., 932 F.3d 1253, 1263 (9th Cir. 2019)).

Critically here, the loss of value of personal information is not an enumerated loss recoverable under CFAA. Indeed, the Ninth Circuit rejected a comparable theory of loss in *Andrews*. *See* 932 F.3d at 1262–63; *accord Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485–86 (N.D.

11

Cal. 2021) (dismissing theories of loss premised on lost value). Here, the only conceivable loss Plaintiffs have alleged is a loss in value of their personal information. *See* Dkt. 35, ¶¶ 103-115; 270-271. Because lost value is not recoverable under CFAA, Plaintiffs' claim should be dismissed.

**D.    Plaintiffs Have Not Sufficiently Alleged Intrusion Upon Seclusion (Count 3)**

Plaintiffs appear to assume, improperly, that California law applies to each of their claims for intrusion upon seclusion. Defendants believe various state laws apply, and a proper choice of law analysis will be required under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) and its progeny to ascertain whether variations in state law make the action unsuitable for class treatment. Plaintiffs failed to state claims for intrusion upon seclusion under applicable state laws.

**1.    California**

California law applies to Plaintiffs Brewer, Theus and Ryan. "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Under California law, an action for invasion of privacy by intrusion upon seclusion has two elements: (1) an intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 991 (N.D. Cal. 2014). For liability to attach, "the intrusion must be intentional" and "the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id*. (citations omitted.)

Here, Plaintiffs Brewer's and Ryan's claims fail because they did not allege their conversations were private and did not allege that they shared <u>any</u> information during the alleged virtual meetings, let alone sensitive and private information for which they had an objectively reasonable expectation of privacy. For example, Brewer alleges only that he attended one Zoom call in February 2025 "where the Otter Notetaker was used by a meeting participant to transcribe the conversation." Dkt. 35, ¶ 135. Plaintiff Ryan alleges that she participated in a Microsoft Teams meeting in January 2025 where the Otter Notetaker appeared as one of her co-worker's notetakers."  *Id*. at ¶ 158. Plaintiff Ryan alleges that she used Microsoft teams to communicate with work colleagues. *Id*. at ¶ 159. Neither allege any facts showing: (1) that they shared any confidential personal information on the virtual meetings they attended; (2) they actually spoke on

the calls and were more than passive attendees; (3) that they had any expectation of privacy in their work meetings that were presumably attended by multiple colleagues and intentionally recorded by a colleague; and (4) they suffered any harm as a result of the transcriptions.

Plaintiff Theus's claim fails for similar reasons. Although Theus alleges she attended a call with a medical professional, she does not allege facts showing what, if any, information she disclosed on the call or that she even spoke on the call as opposed to being a passive attendee. Theus likewise failed to allege any facts showing how she was harmed by the alleged transcription of the call.

This Court's opinion in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, is instructive. There, "the Plaintiff alleged that Defendant disclosed to third parties the LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in the aggregate discloses a user's browsing history among LinkedIn profiles)." *Id*. at 1025. Like here, the Plaintiffs in *Low* argued that the information could, in theory be de-anonymized, which risked exposing their private search histories on LinkedIn. In dismissing Plaintiffs' claim, this Court held:

> Plaintiffs have failed to allege sufficient facts to establish a highly offensive disclosure of information or a "serious invasion" of a privacy interest. … Although Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information, precisely, these third parties have obtained. See AC ¶¶ 31–36. The information disclosed to third parties by LinkedIn, including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts. Plaintiffs have failed to establish that Defendant's conduct "amounts to a serious invasion" of the protected privacy interest.

*Low*, 900 F. Supp. 2d at 1025.

Plaintiffs' claim should be dismissed for the additional reason that none of the California Plaintiffs alleged facts indicating that use of an AI assistant to transcribe and record virtual meetings would be highly offensive to a reasonable person in 2025, particularly when there are no facts indicating what, if anything, was actually disclosed. *See Low*, 900 F. Supp. 2d at 1025 ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Accordingly, the California Plaintiffs failed to allege sufficient facts to state a claim for intrusion upon seclusion.

### 2.    Illinois

Illinois law applies to Plaintiff Winston. Under Illinois law, a plaintiff must plead facts showing: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering. *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1180–81 (2014). "The third element of the tort, requiring allegations of private facts, is the predicate for the other elements, and as such, if this element is not proven, this court need not reach the other elements." *Id.*

Plaintiff Winston's claim fails because she fails to allege that the work discussions she attended on various virtual meeting platforms allegedly transcribed by Otter Notetaker included *private facts about her*. Plaintiffs have not alleged they have a right of privacy in information that does not belong to them or that is not personal to them. Plaintiff Winston alleges only that she "used Zoom, Microsoft Teams, and other video conferencing platforms to communicate information related to her job—such as sensitive business discussions, strategic planning sessions, confidential project meetings, performance reviews, discussions with clients, internal team meetings, and other professional communications." Dkt. 35, ¶ 197. As with the California plaintiffs, Winston fails to allege facts showing: (1) that she shared any confidential personal information on the virtual meetings she attended; (2) she actually spoke on the calls and was more than passive attendee; (3) that she had any expectation of privacy in her work meetings that were presumably attended by multiple colleagues and intentionally recorded by a colleague; and (4) she suffered any "anguish and suffering" as required under Illinois law. *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1180–81 (2014).

### 3.    Washington

Washington law applies to Plaintiff Dolan's claim.  Under Washington law, to state a claim for intrusion upon seclusion a plaintiff must plead facts establishing: (1) an *intentional* intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs; (2) with respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy; (3) the intrusion would be highly offensive to a reasonable

person; and (4) that the defendant's conduct was a proximate cause of damage to plaintiff. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024). "With respect to the first element, which relates in part to the requisite intent, '[a]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Id.*

Plaintiff Dolan's claims fail for the same reasons explained above. Dolan alleges only that he "participated in a Zoom meeting in Washington state in March 2024 where the Otter Notetaker recorded the call" and that he "used Zoom to communicate regarding certain professional opportunities." Dkt. 35, ¶ 213. Dolan does not allege facts showing: (1) that he shared any confidential personal information on the virtual meeting he attended; (2) he actually spoke on the call and was more than passive attendee; (3) that he had any expectation of privacy in his work meeting that was presumably attended by multiple colleagues and intentionally recorded by a colleague, if not himself; and (4) he suffered any harm or damage as a result of the transcription.[2] Dolan also fails to allege facts showing that Otter believed, or was substantially certain, that it lacked the necessary legal or personal permission to transcribe or record the call, as is required under Washington law. Accordingly, Dolan's claim should be dismissed as well.

### E.    Plaintiffs Have Not Sufficiently Alleged Conversion (Count 4)

Notably, Illinois does not recognize conversion claims for intangible personal information. *See, e.g., Z's IT Consulting Servs., Inc. v. Hunt L. Grp., LLC*, 2024 IL App (3d) 230333, ¶ 19, appeal allowed, 256 N.E.3d 992 (Ill. 2025). Accordingly, Plaintiff Winston cannot assert a conversion claim based on personal information such as "Conversational data" or "Speaker data."

The California Plaintiffs' (Brewer, Theus and Ryan) claim fails also.[3] Under California law, "to establish the tort of conversion, 'a plaintiff must show ownership or right to possession of

---

[2] Dolan's allegations also indicate he is unsure whether he obtained an Otter account. Dkt. 35, ¶ 214. To the extent Dolan created an Otter account, he expressly consented to the transcription under Otter's Terms of Use, which negates his claim.

[3] To the extent Washington recognizes a claim for conversion of personal information, the elements are similar to a claim under California law. *See In re Marriage of Langham & Kolde*, 153 Wash. 2d 553, 564, 106 P.3d 212, 218 (2005).

property, wrongful disposition of the property right and damages.'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003)). Plaintiffs claim fails all three elements. First, "the weight of authority holds that a plaintiff's personal information does not constitute property." *Doe I*, 741 F. Supp. 3d at 845 (quoting *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012)). Here, the only "property" allegedly converted was Plaintiffs' personal information including "Conversational data" or "Speaker data." California does not recognize a property interest in such personal information.

Second, Plaintiffs failed to plead any facts showing a "wrongful disposition" of their personal property. Plaintiffs allege only that "Otter wrongfully disposed of Plaintiffs' and the Class members' property by causing conversational and Speaker Data to be transmitted between their computers and mobile devices and Otter using the Otter Notetaker and OtterPilot without their consent and without payment." Dkt. 35, ¶ 287. There are no allegations that Otter disposed of any property or somehow deprived Plaintiffs use of that property. In fact, Plaintiffs allege that Otter expressly emailed the data back to Plaintiffs at the conclusion of the call.

Third, and finally, Plaintiffs failed to allege facts showing they suffered damages. They assert only that they "suffered injury and damages." *Id*. ¶ 288. This bare conclusion without factual support is insufficient. Moreover, Plaintiffs cannot, as a matter of law, adequately allege damages to support a conversion claim. This Court recognizes that "[t]he loss of personal data is also not sufficient to demonstrate an economic injury." *Doe I*, 741 F. Supp. 3d at 845.

Plaintiffs' conversion claim fails as a matter of law and should be dismissed with prejudice.

### F.    Plaintiffs' Unjust Enrichment/Restitution Claim Fails (Count 5)

Under California law, "unjust enrichment" is not an independent cause of action; courts construe it as a quasi-contract claim for restitution requiring that the defendant received a benefit at the plaintiff's expense and unjustly retained it. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Equitable restitution is also unavailable where an adequate remedy at law exists. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020). Plaintiffs' claim fails for two reasons.

First, Plaintiffs admit that they have an adequate remedy at law. Specifically, Plaintiffs plead requests for compensatory and statutory and "an award . . . of all damages," and assert claims under various statutes and common law that would result in a legal remedy. *See, e.g.*, Dkt. 35, ¶¶ 257 (seeking "statutory damages"), 271 ("economic damages," and "compensatory damages"), 307 (statutory damages or three times actual damages), 314 (seeking statutory damages), 323 (statutory damages), 330 (compensatory damages), 341 (actual damages, treble damages and "any other damages that are authorized by law"), 367 (statutory damages), 372 (statutory damages), 385 (actual damages or statutory damages), Prayer for Relief ¶¶ c and g; Counts 1-4, 7-13, 15-17. That forecloses restitution under *Sonner*.

Second, Plaintiffs allege no benefit received by Otter at Plaintiffs' expense. The only "benefit" Plaintiffs point to are amorphous "economic benefits" received by Otter. Dkt. 35, ¶ 277. But Plaintiffs do not allege that *they* conferred a specific, measurable benefit on Otter (let alone some economic benefit), that Otter retained any such benefit from *them*, or why such retention would be unjust. Therefore, Count 5 should be dismissed.

### G.  Plaintiffs Are Not Entitled To A Declaratory Judgment (Count 6)

Plaintiffs' declaratory relief claim fails for the reasons discussed throughout this Motion. Plaintiffs lack standing to assert their claims and have not suffered harm as a result of any conduct by Defendant Otter. Accordingly, Plaintiffs are not entitled to "a declaration that Otter violated their personal and privacy rights" or that Otter must make certain remedial measures. *See* Dkt. 35, ¶ 286.[4] There is no actual controversy as to whether Otter unlawfully collected certain information from Plaintiffs and the class Members.

### H.  Plaintiffs' Cannot Allege Trespass to Chattels (Count 7)

Plaintiffs' claim for Trespass to Chattels fails for the same reasons their conversion claim fails—because Plaintiffs failed to allege facts showing that: (1) they have a property interest in their personal information; (2) the Otter Notetaker interfered with their possession of recognized personal property; and (3) they were injured.

---

[4] The numbering of the paragraphs in Plaintiff's Complaint restarts to 274 after the first paragraph 290.

17

CASE NO:5:25-CV-06911-EKL
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

"Trespass to chattels has been coined 'the little brother of conversion' as it 'allows recovery for interferences with possession of personal property not sufficiently important to be classed as conversion.'" *Doe I*, 741 F. Supp. 3d at 845 (quoting *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 967 (9th Cir. 2024)). "Under California law, a trespass to chattels claim exists 'where an intentional interference with the possession of personal property causes injury.'" *Best Carpet Values, Inc.*, 90 F.4th at 968 (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51, (2003)).

First, as discussed above, the only "property" allegedly converted was Plaintiffs' personal information including "Conversational data" or "Speaker data." California does not recognize a property interest in such personal information. *See Doe I*, 741 F. Supp. 3d at 845 (quoting *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1075 ("the weight of authority holds that a plaintiff's personal information does not constitute property.")). Second, even if Plaintiffs' personal information was property subject to trespass, there are no allegations that Otter interfered with Plaintiffs' possession of that property. Plaintiffs allege only that Otter obtained the contents of conversations by placing its Notetaker and OtterPilot programs on third-party virtual meeting platforms and then recorded and transcribed the contents of those meetings." Dkt. 35, ¶¶ 288-89. There is no allegation whatsoever that Otter interfered with Plaintiffs' possession of their personal information including "Conversational data" or "Speaker data." Indeed, Otter returned it to them via email after the call.

Finally, there are again no factual allegations of harm, injury or damages. Plaintiffs assert, in conclusory fashion, only that Otter interfered with Plaintiffs' use of their computers, mobile phones and Plaintiffs' personally identifiable information. Dkt. 35, ¶ 291. Plaintiffs' conclusory allegations are insufficient as a matter of law. This Court's opinion in *Doe I* is instructive. There, the plaintiffs alleged that Google was liable for trespass by placing source code ("Cookies") onto the plaintiffs' computing devices when plaintiffs visited their health care providers' websites. This Court held that "plaintiffs' allegations of injury are entirely conclusory, they have failed to state a claim for trespass to chattels." *Doe I*, 741 F. Supp. 3d at 846. The Court dismissed the claim explaining that:

Under California law, "decisions finding electronic contact to be a trespass to computer systems have generally involved some actual or threatened interference with the computers' functioning." *Hamidi*, 30 Cal. 4th at 1353, 1 Cal.Rptr.3d 32, 71 P.3d 296. Here, the plaintiffs allege that the placement of cookies on their devices "reduces storage, disk space, and performance" but they offer no factual support for these allegations. . . . And it is not obvious how the presence on one's computer of the cookies from the providers' websites would result in any cognizable reduction in storage, disk space, or performance.

The plaintiffs also allege that the presence of Google source code renders their devices useless for exchanging private communications with their health care providers. . . . But nothing about the source code or the existence of cookies physically impairs the functioning of the plaintiffs' computing devices. And the decision not to use one's computer to communicate with a specific entity is not the same as actually being deprived of the ability to use one's computer.

*Doe I*, 741 F. Supp. 3d at 846. The same is true here. There are no allegations that Otter interfered with Plaintiffs' ability to use their computers, phones or personal information. Plaintiffs' trespass claim should be dismissed.

## I.     Plaintiffs' Claims Under CIPA § 631(a) and 632 Fail (Count 8)

### 1.     Section 631

Section 631(a) contains four clauses: (1) intentional wiretapping; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without consent; (3) attempting to use or disclose information obtained through either of the first two actions; or (4) aiding, agreeing with, employing, or conspiring with others to violate the prior three clauses. Cal. Penal Code §631(a). As shown below, Plaintiffs cannot proceed under any of these clauses.

#### a.     Clause One Does Not Apply

Courts uniformly recognize that clause one is limited to telephonic communications and does not apply to websites. *See Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *4 (C.D. Cal. Mar. 7, 2023); *Swarts v. The Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023).

#### b.     Plaintiffs Cannot Allege a Claim Under Clause Two

Clause two does not apply to a party to the communication. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *Swarts*, 689 F. Supp. 3d at 744–45; *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017). The Complaint admits that

Otter's Notetaker joins the meetings. Dkt. 35, Image 1 (showing Otter Notetaker as a participant in a zoom meeting), ¶¶ 6, 40, 49, 50. As a party to the meetings, Otter cannot directly violate clause two of CIPA.

Moreover, Plaintiffs' "in transit" assertions are bare conclusions – repeated references to "real-time," and "in transit" – unsupported by specifics about *when* the supposed interception occurred or *how* information was captured content *before* receipt. Dkt. 35, ¶¶ 41, 50, 139, 151, 163, 175, 188, 202, 217, 294, 205. Courts reject such *ipse dixit* allegations. *See Esparza v. Gen Digital, Inc.*, 2024 WL 655986, *4 (C.D. Cal. Jan. 16, 2024) (allegations that software "automatically acquires and transmits" communications "in real time" merely restate the element and do not show contemporaneous interception); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (same); *Swarts*, 689 F. Supp. 3d at 746.

### c.    Plaintiffs Have Not Alleged A Clause 3 Violation

Clause three rises and falls with clauses one or two. *Swarts*, 689 F. Supp. 3d at 744; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). With no viable clause-one or two theory against Otter, this clause fails.

### d.    Plaintiffs Have Not Made, And Cannot Make, A Claim Under Clause 4

Plaintiffs do not appear to allege a violation of Clause 4 of CIPA, which prohibits "aiding/agreeing/employing/conspiring" language, as they never state who Otter is aiding or abetting. But even if Plaintiffs attempted to do so, they could not.

Clause four imposes only derivative liability: a defendant is liable under §631(a)(4) only if it "aids, agrees with, employs, or conspires with" someone else to commit a clause-one-to-three violation. Cal. Penal Code § 631(a); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *11–12 (E.D. Cal. Mar. 30, 2023) (clause-four liability is derivative and fails absent a predicate cl. 1–3 violation). Because the statute is criminal in nature and does not define those verbs, courts import criminal aiding-and-abetting standards, which require allegations that the defendant knew the third party's conduct would breach §631(a) and intended to facilitate that breach (or gave substantial

1    assistance amounting to its own breach). *See* Cal. Penal Code § 631(a) (prescribing fines and

2    imprisonment); *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 196 (1978) (Section 631 "prescribes

3    criminal penalties" for distinct patterns of conduct); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL

4    559241, at 6 (S.D. Cal. Feb. 12, 2024) (applying common-law aiding-and-abetting standards).

5    Here, Plaintiffs do not plead any non-conclusory facts that Otter knew any third-party intended to

6    unlawfully intercept the contents of communications in-transit, or that Otter intended to facilitate

7    such a violation. Indeed, Plaintiffs admit that Otter's Privacy Policy requires users to obtain

8    permissions from third parties before using the notetaker. Dkt. 35, ¶¶ 73-74. Therefore, clause

9    four's mental-state requirement is not satisfied.

10               **2.      Section 632**

11         Plaintiffs' claims under Cal Penal Code §632 for two independent reasons.

12         First, "California courts interpret 'eavesdrop,' as used in section 632 to refer to a third party

13   secretly listening to a conversation between two other parties." *In re Google Assistant Privacy*

14   *Litig.*, 457 F. Supp. 3d at 827 (citing *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559

15   (9th Cir. 2008) (party to a call's activities could not constitute eavesdropping and "cannot violate

16   CIPA as a matter of law."), and *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775, 41 P.3d 575, 580–81

17   (2002) (Section 632 prohibits "unconsented-to eavesdropping or recording of conversations

18   regardless of whether the party expects that the *content of the conversation* may later be conveyed

19   to a third party.")). Here, because, as explained above, Otter is a party to the communication,

20   Plaintiffs' section 632 claim fails.

21         Second, Section 632 requires the Plaintiffs to plead that Otter eavesdropped on

22   "confidential communications." Cal. Penal Code §632. As explained with respect to Plaintiffs'

23   Article III standing and invasion of privacy claims, Plaintiffs failed to sufficiently allege

24   confidential communications.

25         **J.      The Notetaker Is Not Primarily Or Exclusively Designed For Eavesdropping**
              **under CIPA §635 (Count 9)**
26

27         CIPA §635 prohibits the manufacture, sale or furnishing, among other things, of a device

28   that is "*primarily or exclusively* designed or intended for eavesdropping upon the communication

of another." Cal. Penal Code §635 (emphasis added). As noted above, eavesdropping involves a third party secretly listening in on the conversations of another. Here, however, the Otter notetaker does not secretly listen in – its presence is known to everyone in the meeting as the notetaker is a participant and shown as such. Dkt. 35, ¶¶ 4, 41 (Image 1), 44 ("Otter Notetaker joins the meeting"), 49 (same), 50 (same).

Moreover, Otter's Notetaker is not "primarily or exclusively designed" for eavesdropping. Plaintiffs allege that the notetaker is designed to be present in the meeting (as a participant) (*id.*), and to assist the registered user in recording and transcribing the meeting among other things. *E.g., id* at ¶8. That is its primary purpose. Plaintiffs' conclusory allegations that merely restate the requirements of the statute are insufficient. *Adams*, 355 F.3d at 1183 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.")

### K.     The Notetaker Is Not a Pen Register Or Trap And Trace Device (Count 10)

CIPA § 638.51 prohibits the use of a "pen register" or trap and trace device" without consent or a court order. Cal. Penal Code § 638.51(a)-(b). "Pen register" and "trap and trace device" are defined in Cal Penal Code § 638.50 as follows:

> (b) "Pen register" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. [ ].
>
> (c) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(b)-(c).

First, definitionally, Plaintiffs do not allege what outgoing (pen register) or incoming (trap and trace) information about the "dialing, routing, addressing, or signaling information" the Otter notetaker collects. Plaintiffs' allegations focus on the contents of the communications.

Second, *by definition*, a pen register or a trap and trace device record, capture, or decode "information ***about*** a communication, '***but not the contents*** of a communication.'" *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, *5 (N.D. Cal. Aug. 6, 2025) (quoting Cal. Penal Code § 638.50(c)) (emphasis is original). This is not accidental. Cal Penal Code § 631(a) governs wiretaps and eavesdropping that capture the contents of a communication. Cal. Penal Code § 638.51 governs devices that capture information about the communication. These sections together provide a comprehensive scheme that governs two different technologies. Courts in this district and the California Superior Court have consistently concluded that the statutory definition of pen registers and trap and trace devices in § 638.50 excludes devices that are capable of collecting the contents of a communication. *Mitchener*, 2025 WL 2272413, at *5; *Kishnani v. Royal Caribbean Cruises Ltd*., No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (Wise, J.) (same); *Price v. Headspace, Inc.,* No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025) ("what has remained steadfast throughout is the principle that neither a pen register nor a trap and trace device can decode "the contents of a communication.'" (quoting Cal. Penal Code § 638.50(c))); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (the "legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites").

In *Mitchener*, *Kishnani,* and *Price*, the courts addressed allegations relating to the TikTok Pixel and concluded that it could not be a pen register or a trap and trace device based on the plaintiffs' own allegations that the TikTok software collects content information. *See Mitchener,* 2025 WL 2272413, at *5 (allegations that the "technology . . . scan[s] every page of the Website visited for additional information about the visitor, such as name, date of birth, and address," which the court found could only come from the content of the communication); *Price,* 2025 WL 1237977, at *3 (plaintiff alleged that TikTok "fingerprint[s]" website visitors to "collect[ ] as much data as it can about a normally and otherwise anonymous Website visitor" including images and behavior); *Kishnani*, 2025 WL 1745726, at *4 ("TikTok Software is Not a Track and Trace

Device"). Here, similarly, Plaintiffs allege that Otter's notetaker collected the contents of the meetings they were in. Dkt. 35, ¶¶ 137, 151, 163. This, by definition, defeats Plaintiffs' CIPA § 638.51 claim.

Finally, even if Plaintiffs could establish that the Otter Notetaker is a pen register or trap and trace device, Plaintiffs fail to allege specific facts to support this claim. No Plaintiff alleges what specific information of theirs was collected, that it was collected, or how or where the Otter notetaker supposedly collected it.

### L.    Plaintiffs' Comprehensive Computer Data and Fraud Access Act Claim Fails

Similar to the CFAA claim, Plaintiffs' claim under the Comprehensive Computer Data and Fraud Access Act fails because Plaintiffs did not allege facts showing: (1) how and to what extent the Otter Notetaker program accessed Plaintiffs' computers; or (2) how Plaintiffs suffered damage or loss as a result of the alleged access.

Plaintiffs assert a claim under Cal. Penal Code § 502(c)(2). Dkt. 35, ¶ 326. Section 502(c)(2) imposes liability against anyone who "[*k]nowingly accesses* and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2) (emphasis added). Section 502(e)(1) limits standing to "the owner or lessee of the computer, computer system, computer network, computer program, or data *who suffers damage or loss by reason of a violation* of any of the provisions of subdivision (c) …." Cal. Penal Code § 502(e). Plaintiffs' claim fails for two reasons.

First, as both the title and plain language of the statute make clear—access to the Plaintiffs' computers is key.[5] Under Cal. Penal Code § 502(b)(1) "'Access' means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer

---

[5] Plaintiffs do not, and cannot, allege that they own the virtual meeting platforms on which Otter Notetaker is deployed or the computer systems through which it operates. Accordingly, the only relevant access under CFAA and CDAFA would be to Plaintiffs' computers.

network." Here, Plaintiffs do not allege *facts* showing that Otter accessed their computers. Indeed, in Paragraph 328 of the Complaint, Plaintiffs assert, in conclusory fashion, that "Otter accessed, copied, took, analyzed, and used data from Plaintiffs and California Class members' computers [and] used servers that provided communication links between Plaintiffs and California Class members' computers and Otter, which allowed Otter to access and obtain Plaintiffs' and California Class members' data. Accordingly, Otter caused the access of Plaintiffs' and California Class members' computers …." But Plaintiffs' deficient conclusory assertions are belied by own allegations when describing their experiences with Otter.

Brewer nowhere alleges that Otter accessed his computer. *See* Dkt. 35, ¶¶ 135-45. He complains only that Otter transcribed and recorded a virtual Zoom meeting he attended. He provides no facts showing how Otter could have or actually did access his computer. At best, Brewer complains only that Otter recorded and transcribed information that Brewer voluntarily shared with others during a Zoom meeting. *See Id*. The same is true for Plaintiffs Theus and Ryan. *See id*. ¶¶ 146-69.

Second, even if Plaintiffs could allege access, Plaintiffs fail to allege they suffered injury or damage due to Otter Notetaker recording or transcribing their communications they voluntarily provided to others during their meetings. "CDAFA allows compensatory damages for 'any expenditure reasonably and necessarily incurred' by the computer owner 'to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted' by unlawful access." *Doe I*, 741 F. Supp. 3d at 846–47 (dismissing CDAFA claim where Plaintiffs failed to allege recoverable damages). Plaintiffs nowhere allege that they spent any resources verifying whether or to what extent their computers or data was altered, damaged or deleted. *See* Dkt. 35, ¶¶ 135-69. Nor can they as there are no allegations that Plaintiffs' information was altered, damaged or deleted.

Even assuming the scope of damages is broader than as expressly enumerated in CDAFA, Plaintiffs still fail to allege how they suffered any loss or harm due to Otter's alleged access. *Compare Doe I*, 741 F. Supp. 3d at 846–47 *with Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611-RFL, 2026 WL 89320, at *1 (N.D. Cal. Jan. 12, 2026). Plaintiffs allege only "[a]s a direct

and proximate result of Otter's unlawful conduct within the meaning of Cal. Penal Code § 502, Otter has caused loss to Plaintiffs and California Class members and has been unjustly enriched in an amount to be proven at trial." Dkt. 35, ¶ 329. This is a conclusory allegation. There are no factual allegations showing how Brewer, Theus or Ryan were harmed and no factual allegations showing that Otter has been unjustly enriched. The Complaint is completely devoid of any allegations showing the value of Plaintiffs' personal information allegedly transcribed by Otter or that Otter sold or otherwise profited from Plaintiffs' personal information. Plaintiffs' CDAFA claim should be dismissed.

### M.    Plaintiffs' Larceny/Receipt of Stolen Property Claim Fails (Count 12)

Plaintiffs' claim for larceny/receipt of stolen property fails for the same reasons the conversion and trespass claims fail. Under California Penal Code section 496 a person may bring an action for treble damages against any person "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code §§ 496(a), (c); *see* Cal. Penal Code § 484 (defining "theft"); *see also Lau v. Gen Digital Inc.*, No. 22-CV-08981-JST, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom. Karwowski v. Gen Digital, Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025).

Plaintiffs' larceny claim fails because the personal information at issue here does not constitute property under California law. Again, "the weight of authority holds that a plaintiff's personal information does not constitute property." *Doe I*, 741 F. Supp. 3d at 845 (quoting *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1075); *see also McClung v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024)(the Court is "skeptical of the idea" that theft of personal information makes it less valuable to the person it was stolen from.); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's personal information does not constitute property under the UCL."), but *cf. Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021)("plaintiffs

who suffered a loss of their personal information suffered economic injury and [have] standing" to sue under the UCL).

Here again, the only "property" allegedly stolen was Plaintiffs' personal information including "Conversational data" or "Speaker data" and Plaintiffs fail to allege any actual harm or damages resulting from the alleged theft. *See* Dkt. 35, ¶ 340. Because the weight of California authority, including majority of the opinions from this Court, do not recognize a property interest in the type of personal information at issue here, Plaintiffs' larceny claim must be dismissed. *See Lau*, 2023 WL 10553772, at *7 ("Plaintiffs have cited no authority, and this Court is aware of none, for the proposition that a plaintiff may bring an action for statutory larceny without alleging loss of property, or that a statutory larceny claim can survive when a plaintiff lacks standing to sue under the UCL because they have failed to allege loss of money or property.")

### N.    Plaintiffs Have Not Sufficiently Pled Invasion of Privacy Under Cal. Const. Art. I, § I (Count 13)

Plaintiffs' claim for invasion of privacy under the California Constitution fails for the same reason as Plaintiffs' common law claim for invasion of privacy by intrusion upon seclusion. California courts consider separate claims for invasion of privacy under the California Constitution and the common law together and "ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Doe I*, 741 F. Supp. 3d at 844; *see also In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 601. "The inquiry about the offensiveness of an intrusion involves examining 'all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives.'" *Id*. (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009)). "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Id*. (quoting *Low*, 900 F. Supp. 2d at 1025).

As explained above regarding Plaintiffs' claim for intrusion upon seclusion, Plaintiff Brewer's and Ryan's claims fail because they did not allege their conversations were private and did not allege that they shared *any* information during the alleged virtual meetings, let alone sensitive and private information for which they had an objectively reasonable expectation of privacy. Brewer alleges only that he attended one Zoom call in February 2025 "where the Otter

Notetaker was used by a meeting participant to transcribe the conversation." Dkt. 35, ¶ 135. Ryan alleges that she participated in a Microsoft Teams meeting in January 2025 where the Otter Notetaker appeared as one of her co-worker's notetakers." *Id.* at ¶ 158. Neither Brewer nor Ryan allege any facts showing: (1) that they shared any confidential personal information on the virtual meetings they attended; (2) they actually spoke on the calls and were more than passive attendees; (3) that they had any expectation of privacy in their work meetings that were presumably attended by multiple colleagues and intentionally recorded by a colleague; and (4) they suffered any harm as a result of the transcriptions.

Plaintiff Theus's claim fails for similar reasons. Although Theus alleges she attended a call with a medical professional, she does not allege facts showing what, if any, information she disclosed on the call or that she even spoke on the call as opposed to being a passive attendee. Theus likewise failed to allege any facts showing how she was harmed by the alleged transcription of the call.

### O.    Plaintiffs Cannot Plead A UCL Violation (Count 14)

This Court should dismiss Plaintiffs' claim for Unfair Business Practices under California Business & Professions Code section 17200, *et seq.* (the "UCL claim") for two reasons: First, Plaintiffs have an adequate remedy at law, and second, Plaintiffs do not allege the loss of any money or property.

California courts recognize that a UCL claim is limited to injunctive relief: "[a] UCL action is equitable in nature; damages cannot be recovered." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 (citation omitted).) Consistent with principles of equity, in order to establish their UCL claim, a Plaintiff must establish that he lacks an adequate remedy at law. Absent such a showing, UCL claims cannot stand. *(Prudential Home Mortg. Co. v. Super. Ct.* (1998) 66 Cal.App.4th 1236, 1250, *as modified on denial of reh'g* (Oct. 29, 1998) (striking UCL claim because statutory remedies were adequate).) Plaintiffs do not, and cannot, allege any facts demonstrating that they have an inadequate remedy at law. (*See* Dkt. 35, Complaint *generally*). Indeed, as noted above, Plaintiffs seek compensatory and statutory damages.

Second, in order to sustain their UCL claim, Plaintiffs are also required to allege an actual loss of "money or property" as a result of Otter's allegedly violative conduct. (Cal. Bus. & Prof. Code § 17204; *Rincon Band of Luiseno Mission Indians etc. v. Flynt* (2021) 70 Cal.App.5th 1059, 1097 (dismissing UCL claim for, among other reasons, failure to plead "lost money or property")).) Here, while Plaintiffs make a general, conclusory allegation that they suffered a "loss of money and/or property," (Dkt. 35, ¶ 357), they never articulate any actual loss of "money and/or property." As to "property," Plaintiffs appear to claim a loss of "personal information, conversational data, and Speaker Data." *Id.* But as explained above with respect to the Conversion and Larceny claims, these are not "property."

**P.     Plaintiffs' Cannot Allege Violations Of BIPA (Counts 15 and 16)**

Plaintiffs' BIPA claims should be dismissed for two independent reasons.

**1.     BIPA Does Not Apply Extraterritorially**

BIPA contains no express provision that it applies extraterritorially. Under Illinois law, therefore, BIPA does not have extraterritorial effect as "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (Ill. 2005) (internal citation and quotation omitted). Therefore, Plaintiffs' BIPA claims can only survive if "the circumstances that relate to the disputed transaction occur[ed] primarily and substantially in Illinois." *Id.* at 187. More specifically, the BIPA violations must occur in Illinois. *McGovern v. Amazon Web Servs, Inc.*, 2021 WL 4502089, *3 (D. Del. Sept. 30, 2021).

The only connection to Illinois alleged is that the Walker Plaintiffs and Plaintiff Winston reside in Illinois (Dkt. 35, ¶¶ 23-26), and that each of them participated in one or more zoom meetings while in Illinois. *Id.* ¶¶ 170, 183, 196. Plaintiffs include no other allegations relating to Illinois. Rather Plaintiffs allege that: (1) Otter's principal place of business is in California (*Id.* ¶ 28); (2) the alleged decision to engage in the complained of behavior was made in California (*Id.* at ¶ 29); (3) "All Class members' claims [presumably including the Walkers and Ms. Winston] arise from . . . Otter's contacts with California," (*Id.* at ¶ 30); and (4) the alleged improper recordings and captured data are sent to Otter's servers (*id.* at ¶ 50). In essence, the only connection

to Illinois is that the Walkers and Ms. Winston reside in Illinois and happened to be on zoom meetings in Illinois.

In *McGovern*, the plaintiffs claimed that the defendants violated BIPA by obtaining voiceprints from Illinois citizens on calls originating from Illinois on Illinois phone numbers. 2021 WL 4502089 at *4. But the plaintiffs made no allegations that the alleged voiceprints were created, possessed, or stored in Illinois. That is the same as the present case – Plaintiffs have no allegations, other than their residency, that provide a connection to Illinois. As the *McGovern* court stated, "[a] plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality. *Id.* at *4.

Recently, this court, in *Vance v. Google, LLC*, 2024 WL 1141007 (N.D. Cal. March 15, 2024) similarly granted a motion to dismiss BIPA claims. In *Vance,* plaintiffs' only connections to Illinois were that they were residents in Illinois and uploaded their photos to a website from Illinois. *Id.* at *3. The court found this insufficient because plaintiffs failed to allege any connection the violative acts had to Illinois. *Id.* The court reiterated that "Plaintiffs' residency alone is not enough to connect [defendant's] conduct to Illinois." *Id.* at *4. Similarly, Plaintiffs here only alleged connection to Illinois is their residency.

Similarly, in *Campana v. Nuance Comms, Inc.*, 2024 WL 2809838 (N.D. Ill. March 8, 2024) the Northern District of Illinois found BIPA claims lacking on extraterritoriality grounds. There, the plaintiffs alleged connections to Illinois were merely their residency. *Id.* at *2. The court found that insufficient and granted dismissal:

> where the plaintiffs have failed to allege any facts, apart from their physical presence in Illinois when they interacted with the defendant's products, the complaint does not plausibly suggest that the events occurred "primarily and substantially" in Illinois.

*Id.* at *3.

## 2. Otter Does Not Collect Biometric Identifiers Or Biometric Information

Additionally, Plaintiffs claims under BIPA fail because Plaintiffs have not alleged that Otter collected their biometric identifiers or biometric information. Both require that the

information be capable of identifying a particular individual and Plaintiffs have not alleged that with respect to themselves.

First, both terms require that the collected information can identify a particular individual. A "Biometric identifier" by its very name requires it be capable of identifying an individual. The definition of "Biometric information" in BIPA requires that the information is "used to identify an individual." 740 ILCS 14/10. Courts, including the Ninth Circuit, have agreed. *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124-25 (9th Cir. 2024); *G.T. v. Samsung Elecs. Am., Inc.*, 742 F.Supp.3d 788, 800 (N.D. Ill. 2024); *Daichnendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, *5 (N.D. Ill. Dec. 2, 2022).

But Plaintiffs do not plead that the "voiceprint" allegedly collected by Otter could identify them – non-users of Otter's services. While Plaintiffs include many allegations of what various Otter products *can* do, including associating names or other information with an alleged voiceprint (Dkt. 35, ¶118), Plaintiffs do not allege that any such information about them was gathered by Otter during their Zoom meetings or otherwise. Absent any indication that Otter had any identifying information about Plaintiffs (whose entire case is based on the concept that they never signed up for Otter), Plaintiffs have not alleged that any "voiceprint" Otter may collect is capable of identifying them. *See Zellmer*, 104 F.4th at 1125; *G.T.*, 742 F.Supp.3d at 801 (allegations that app grouped unidentified faces together and the user could add names insufficient to support BIPA claim); *Daichnendt*, 2022 WL 17404488 at *5 ("Plaintiffs do not allege that they provided defendant with any information, such as their names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities.")

**Q.      Plaintiff Dolan's Washington Wiretap Act Claim Is Insufficient (Count 17)**

The Washington Wiretap Act prohibits the interception or recording of

(a) ***Private communication*** transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) ***Private conversation***, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

Wash. Rev. Code Ann. § 9.73.030(1) (emphasis added). Under Washington law, "[a] communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable." *State v. Modica*, 164 Wash. 2d 83, 88, 186 P.3d 1062, 1064 (2008). The court looks at many factors when considering if a conversation is private, including "[a]mong other things, the subject matter of the calls, the location of the participants, the potential presence of third parties, and the role of the interloper." *State v. Modica*, 164 Wash. 2d 83, 88, 186 P.3d 1062, 1064 (2008). As explained previously, Plaintiff Dolan failed to allege sufficient facts to establish that he made any communications, let alone that they were "private." Nor does he allege the location of the participants or the potential presence of third parties.

Indeed, Dolan knew his communications were not private, but were shared with another – Otter. As alleged in the Complaint, when joining a meeting Otter appears as another participant. Thus, Dolan saw the "potential presence of [a] third part[y]." Any subjective belief Dolan had that his conversations were private were unreasonable as it was obvious on his screen that another party he claims he did not know (Otter.ai) was involved. Dkt. 35, ¶ 41 (Image 1). *Matter of Hopper*, 4 Wash. App. 2d 838, 849, 424 P.3d 228, 233 (2018) (Defendant's "subjective expectation of privacy was objectively unreasonable.")

## **CONCLUSION**

Plaintiffs have failed to allege any concrete injury, thus depriving them of standing to sue. Moreover, Plaintiffs have simply failed to plead any *facts* to support the elements of their claims. Therefore, for all of the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated:    January 20, 2026          CLARK HILL PLC

By: */s Kraig Jennett*

1

Kraig Jennett (CA Bar No. 261019)

2

CLARK HILL PLC

3
Kraig D. Jennett (CA Bar No. 261019)
1001 Pennsylvania Avenue, N.W.

4
Suite 1300 South
Washington, DC 20004

5
Telephone: (202) 772-0913
Facsimile: (202) 772-0919

6
Email: kjennett@clarkhill.com

7

CLARK HILL PLC

8
Peter T. Berk (*Pro Hac Vice forthcoming*)
IL ARDC No.: 6242515

9
130 E. Randolph, Suite 3900
Chicago, IL 60601

10
Telephone: (312) 701-6870
Facsimile: (312) 985-5999

11
pberk@clarkhill.com

12

Attorneys for Defendant Otter.ai, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO:5:25-CV-06911-EKL

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

### CERTIFICATE OF SERVICE

2      I hereby certify that I caused the foregoing document(s) to be electronically filed with the

3  Clerk of the Court for the United States District Court, Northern District of California, by using

4  the Court's CM/ECF system on January 20, 2026.

5      I certify that all participants in the case are registered CM/ECF users and that service will

6  be accomplished by the Court's CM/ECF system.

7                                                    */s/Kraig Jennett*

8                                                    Kraig Jennett (Ca Bar No. 261019)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF