**LEVIN LAW, P.A.**
Brian Levin (*admitted by PHV*)
*brian@levinlawpa.com*
Brandon T. Grzandziel
(*pro hac vice* to be filed)
*brandon@levinlawpa.com*
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
Tel: (305) 539-0593

Jacob Polin (SBN 311203)
*jacob@levinlawpa.com*
344 20th Street
Oakland, California 94612
Tel: (305) 402-9050

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs & the Proposed Classes*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| *IN RE: OTTER.AI PRIVACY LITIGATION* | Case No. 5:25-cv-06911-EKL<br>Hearing Date: May 20, 2026<br>Time: 10:00 am.<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Judge: Eumi K. Lee |

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT .........................................................................................................................4

    I.     PLAINTIFFS HAVE ARTICLE III STANDING BECAUSE EACH
           PLAINTIFF HAS SUFFERED COGNIZABLE HARM. ...................................4

         A.     Legal Standard for Article III Standing. ...............................................5

         B.     Plaintiffs Allege Concrete Injuries Sufficient to Confer Standing. .............5

    II.    PLAINTIFFS STATE VIABLE CLAIMS UNDER EACH CAUSE OF
           ACTION.................................................................................................................8

         A.     Legal Standard for FRCP 12(b)(6)........................................................9

         B.     Plaintiffs State a Viable Claim Under the ECPA.........................................9

          C.     Plaintiffs Plausibly Allege a Viable CFAA Claim....................................12

             1.     Plaintiffs allege that Notetaker "accessed" computers within
                  the meaning of the CFAA. ...........................................................12

             2.     Otter unquestionably intended to access Plaintiffs' data. .............13

             3.     Plaintiffs plausibly allege losses under the CFAA.........................14

          D.     By Joining Meetings Without Consent, Recording Conversations,
             and Transmitting the Contents to Its Servers, Otter Intercepted
             Plaintiffs' Communications in Violation of Cal. Penal Code §
             631(a) and § 632.................................................................................16

             1.     Plaintiffs State a Viable § 631 Claim............................................16

                 a.     Plaintiffs allege that Otter attempted to learn the
                       contents or meaning of communications in real-time. .......17

                 b.     Plaintiffs have adequately alleged a violation of §
                       631(a)(iii). ..........................................................................19

             2.     Plaintiffs Adequately State a § 632 Claim. ...................................20

          E.     Plaintiffs State a Claim for Violations of the Comprehensive
             Computer Data Access and Fraud Act. ........................................................21

             1.     Plaintiffs adequately allege that Otter accessed their data............21

             2.     Plaintiffs Suffered Compensable Losses Under CDAFA. .............22

         F.     Plaintiffs Adequately Plead a UCL Claim. ...............................................23

         G.     Plaintiffs Allege Viable BIPA Claims. ......................................................24

*i*

1. Otter's extraterritoriality argument does not defeat Plaintiffs' BIPA claims. ...................................................24

    a. *Plaintiffs sufficiently allege that Otter's violation occurred primarily and substantially in Illinois.* ..............25

    b. *Applying the extraterritoriality doctrine would be premature.* ..................................................................26

2. Plaintiffs sufficiently allege that Otter collected their biometric data. ..............................................................26

H. Plaintiff Dolan Plausibly Alleges Violation of the Washington Wiretap Act. ....................................................28

I. Plaintiffs Adequately State a Claim for Declaratory Judgment. ................28

J. Plaintiffs Plausibly Allege Viable Claims of Intrusion upon Seclusion and Invasion of Privacy Because Defendant Breached Their Reasonable Expectation of Privacy. ....................................29

  1. California Plaintiffs Plausibly Allege Viable Claims of Intrusion upon Seclusion and Invasion of Privacy. ........................30

  2. Plaintiff Dolan plausibly alleges a viable intrusion upon seclusion claim under Washington law. ..........................................32

    a. *Plaintiff Dolan alleges an intentional intrusion.* ..............32

    b. *Dolan Had a Reasonable Expectation of Privacy in his Zoom Calls.* ..................................................................33

    c. *Plaintiff Dolan suffered harm as a result of Otter's actions.* ..........................................................................34

K. Plaintiffs Plead a Viable Unjust Enrichment Claim. ..................................35

CONCLUSION .................................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ...........................................................................6

*Ambriz v. Google, LLC*,
2025 U.S. Dist. LEXIS 29609 (N.D. Cal. Feb. 10, 2025)....................................10, 17, 18, 19

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989)...........................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662  (2009)................................................................................9, 15, 31

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753  (9th Cir. 2015)..........................................................................23, 35

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100, 835 N.E.2d 801 (2005) ...............................................................25

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................29

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)...............................................................................5

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................................29

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................9

*Biden v. Ziegler,*
737 F. Supp. 3d 958 (C.D. Cal. 2024)......................................................21, 22, 23

*Bowen v. Porsche Cars, N.A.*,
561 F. Supp. 3d 1362 (N.D. Ga. 2021) ...............................................................15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal 2023) ...........................................................20, 35

*Brown v. Google, LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...............................................................11

*Brown v. Van's Int'l Foods, Inc.*,
2022 WL 1471454 (N.D. Cal. May 10, 2022) .......................................................23

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................24

*Campana v. Nuance*,
2024 WL 2809838 (N.D. Ill. Mar. 8, 2024)..........................................................26

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Campbell v. Facebook Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .............................................................................6, 7, 10, 19

*Camplisson v. Adidas Am., Inc.*,
  2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ..............................................................7

*Castelaz v. Estee Lauder Cos., Inc.*,
  2024 WL 136872 (N.D. Ill. Jan. 10, 2024) .................................................................27

*Colombo v. YouTube, LLC*,
  679 F. Supp. 3d 940 (N.D. Cal. 2023) .......................................................................27

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ......................................................................7, 29

*Davis v. Jumio Corp.*,
  2023 WL 2019048 (N.D. Ill. Feb. 14, 2023).............................................................25, 26

*Davis v. U.S.*,
  564 U.S. 229,(2011) ...................................................................................................7

*Dir. Off. of Workers' Comp. Programs, U.S. Dep't of Lab. v. Perini N. River
  Assocs.*,
  459 U.S. 297 (1983) ....................................................................................................5

Doe I v. Google LLC,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ......................................................................23, 29

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243 (N.D. Cal. 2022) ....................................................................27

*Doe v. Tenet Healthcare Corp.*,
  789 F. Supp. 3d 814 (E.D. Cal. 2025).......................................................................10

*Dresser-Rand v. Jones*,
  957 F. Supp. 2d 610 (E.D. Pa. 2013) ........................................................................12

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
  895 F.3d 1166 (9th Cir. 2018)....................................................................................5

*eBay Inc. v. Digital Point Sols., Inc.*,
  608 F. Supp. 2d 1156  (N.D. Cal. 2009) ...................................................................14

*Eichenberger v. ESPN Inc.*,
  876 F.3d 979 (9th Cir. 2017)......................................................................................6

*Erickson v. Pardus*,
  551 U.S. 89 (2007)......................................................................................................9

*Esparza v. Gen Digital, Inc.*,
  2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ..............................................................19, 22

*Esparza v. Kohl's, Inc.*,
  723 F. Supp. 3d 934 (S.D. Cal. 2024)........................................................................22

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016)...................................................................................15

*FEC v. Ted Cruz for Senate*,
  596 U.S. 289 (2022)..................................................................................................5

*Flanagan v. Flanagan*,
  27 Cal. 4th 766, Cal. Rptr. 2d 574, 41 P. 3d 575  (Cal. 2002)................................20

*Flextronics Int'l Ltd. v. Parametric Tech. Corp.*,
  2014 U.S. Dist. LEXIS 73354  (N.D. Cal. May 28, 2014) ......................................13

*Gabrielli v. Haleon US Inc.*,
  2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)......................................................7, 9

*Garner v. Amazon.com, Inc.*,
  603 F. Supp. 3d 985 (W.D. Wash. 2022)................................................................33

*Gladstone v. Amazon Web Servs.*,
  739 F. Supp. 3d 846  (W.D. Wash. 2024)................................................................17

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078  (N.D. Cal. 2018) .................................................................20

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................................................................18

*Gray v. Amazon, Inc.*,
  653 F. Supp. 3d 847 (W.D. Wash. 2023).................................................................32

*Greenley v. Kochava, Inc.*,
  684 F.Supp.3d 1024  (S.D. Cal. 2023).....................................................................22

*Hamilton v. RadioShack Corp.*,
  2011 U.S. Dist. LEXIS 125683 (N.D. Cal. Oct. 31, 2011)......................................33

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................32

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
  445 F. Supp. 2d 1122 (E.D. Cal. 2008)...................................................................13

*Hassid v. Alex & Ani, LLC*,
  2026 U.S. Dist. LEXIS 11238 (C.D. Cal. Jan. 20, 2026)..........................................6

*In re Anthem Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 17, 2016) .........................................................24

*In re Apple & AT&TM Antitrust Litig.*
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) .............................................................14, 16

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
  585 F. Supp. 3d 1111 (N.D. Ill. 2022) ....................................................................26

*v*                                   Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*In re Facebook Privacy Litigation*,
   572 F. App'x 494  (9th Cir. 2014) ........................................................................24

In re Facebook, Inc.
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................31

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020).............................................................................passim

*In re Google Referrer Header Priv. Litig.*,
   465 F. Supp. 3d 999 (N.D. Cal. 2020) .....................................................................7

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................15

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ..............................................................11, 21

*In re Toys R Us, Inc. Privacy Litig.*,
   2001 WL 34517252 (N.D. Cal. 2001).....................................................................16

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
    2017 WL 3727318  (N.D. Cal. Aug. 30, 2017)......................................................24

*Javier v. Assurance IQ, LLC*,
   2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) .........................................16

*Jewel v. Nat'l Sec. Agency*,
   673 F.3d 902 (9th Cir. 2011)....................................................................................7

*Jones v. Ford Motor Co.*,
   85 F.4th 570 (9th Cir. 2023).....................................................................................7

*Katz v. United States*,
   389 U.S. 347 (1967).................................................................................................33

*Kight v. CashCall, Inc.*,
   200 Cal.App.4th 1377 (2011)...................................................................................20

*Konop v. Hawaiian Air Lines, Inc.*,
   302 F.3d 868 (9th Cir. 2002).....................................................................................9

*Krzyzek v. OpenX Techs., Inc.*,
   2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) .....................10, 11, 16, 17

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ............................................................................................24

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023)...................................................................19

*Low v. LinkedIn Corporation*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................30

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Mahmood v. Berbix, Inc.,*
  2022 U.S. Dist. LEXIS 153010 (N.D. Ill. Aug. 25, 2022) ..................................................25, 26

*Mark v. Broad King Co.*,
  27 Wash. App. 344  (1980) ...........................................................................................................33

*McGovern v. Amazon*,
  2021 WL 4502089  (D. Del. Sept. 30, 2021) ...............................................................................26

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118  (2007) ....................................................................................................................28

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846  (N.D. Ill. Sept. 15, 2017) .............................................................................25

*MPC Containment Sys. v. Moreland*,
  2008 U.S. Dist. LEXIS 60546 (N.D. Ill. July 23, 2008) ..............................................................12

*Multiven, Inc. v. Cisco Sys.*,
  725 F. Supp. 2d 887 (N.D. Cal. 2010) .........................................................................................13

*NetApp, Inc. v. Nimble Storage*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ...........................................................................................14

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 954  (N.D. Cal. 2014) .........................................................................................15

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019).........................................................................................................8

*People v. Hill*,
  17 Cal. 4th 800  (1998) .................................................................................................................14

*Pitre v. Kevita, Inc.*,
  2025 WL 2294913 (N.D. Cal. Aug. 8, 2025)................................................................................35

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025)..........................................................................................................6

*PQ Labs, Inc. v. Qi*,
  2014 U.S. Dist. LEXIS 11769  (N.D. Cal. Jan. 29, 2014) ...........................................................13

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024)..........................................................................................11

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........................................................................................11

*Rodriguez v. Ford Motor Co.*,
  2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024).............................................................16

*Russell v. Walmart, Inc.*,
  680 F. Supp. 3d 1130 (N.D. Cal. 2023) ........................................................................................35

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Safari Club Int'l v. Rudolph*,
862 F.3d 1113 (9th Cir. 2017)..................................................................................32

*Semien v. Pubmatic, Inc.*,
2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) ......................................10, 11

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033  (N.D. Cal. 2025) ..................................................................29

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010)..................................................................................9

*Smith v. Yeti Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .........................................................17, 18, 20

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)..................................................................................35

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................5

*State v. Clark*,
129 Wash.2d 211 (2014) .........................................................................................33

*State v. Faford*,
128 Wash.2d 476 (1996) .........................................................................................33

*State v. Fields*,
31 Wash.App. 687 (2024) .......................................................................................28

*State v. Hinton*,
179 Wash.2d 862 (2014) .........................................................................................33

*State v. Modica*,
164 Wash. 2d 83 (2008) ..........................................................................................28

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................................................................8

*Steiner v. Vi-Jon Inc.*,
723 F. Supp. 3d 784 (N.D. Cal. 2024) ....................................................................35

*Sussman v. Am. Broadcasting Companies, Inc.*,
186 F.3d 1200  (9th Cir. 1999)...............................................................................11

*Swafford v. Int'l Bus. Mach. Corp.*,
383 F. Supp. 3d 916 (N.D. Cal. 2019) ....................................................................35

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d (N.D. Cal. 2023) .....................................................................18, 19

*Thomasson v. GC Servs. Ltd. P'ship.*,
321 Fed. App'x 557 (9th Cir. 2008).........................................................................20

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Ticketmaster LLC v. Prestige Entm't West, Inc.*,
  315 F. Supp. 3d 1147  (C.D. Cal. 2018)....................................................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................................................................5

*United States v. Nosal*,
  930 F. Supp. 2d 1051 (N.D. Cal. 2013) ...................................................................12

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) .............................................................19

*Van Buren v. United States*,
  593 U.S. 374 (2021)..............................................................................................12, 13

*Vance v. Google*,
  2024 WL 1141007 (N.D. Cal. Mar. 15, 2024).........................................................26

*White v. Town of Winthrop*,
  128 Wash.App. 588  (2005) ......................................................................................34

*Wynne v. Audi of Am.*,
  2022 U.S. Dist. LEXIS 131625 (N.D. Cal. July 25, 2022*)* .......................................6

*Yockey v. Salesforce, Inc.*,
  745 F. Supp. 3d 945 (N.D. Cal. 2024) .........................................................17, 18, 19

*Yoon v. Lululemon United States,*
  549 F. Supp. 3d 1073 (C.D. Cal. 2021).....................................................................18

## STATUTES

18 U.S.C. § 1030 (Computer Fraud and Abuse Act (CFAA)).......................................2

18 U.S.C. § 1030(a)(2)(c) ...........................................................................................12

18 U.S.C. § 1030(a)(4) ................................................................................................12

18 U.S.C. § 1030(e)(11) ..............................................................................................15

18 U.S.C. § 1030(g) ....................................................................................................15

18 U.S.C. § 2511 (Eletronic Communications Privacy Act (ECPA)) ............................1

18 U.S.C. § 2511(1)(a)...................................................................................................9

18 U.S.C. § 2511(2)(d)...................................................................................................9

740 ILCS 14/1, *et seq.* (Illinois Biometric Information Privacy Act (BIPA))...............2

740 ILCS § 14/10........................................................................................................27

740 ILCS § 14/15........................................................................................................24

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Cal. Bus. & Prof. Code § 17200, et seq ..............................................................................................23

Cal. Penal Code § 502 (California Comprehensive Computer Data Acess and
    Fraud Act (CDAFA)) ............................................................................................................2

Cal. Penal Code § 502(c)(1)...............................................................................................................21

Cal. Penal Code § 502(c)(1)(2)(7) .....................................................................................................21

Cal. Penal Code § 502(e)(1)..................................................................................................21, 22, 23

Cal. Penal Code § 631 ..........................................................................................................................2

Cal. Penal Code § 631(a) ......................................................................................................16, 17, 20

Cal. Penal Code § 631(a)(iii) .............................................................................................................19

Cal. Penal Code § 632 ......................................................................................................................2, 20

Wash. Rev. Code Ann. § 9.73.030 (Washington Wiretap Act) ...........................................................2

Wash. Rev. Code Ann. § 9.73.030(1) ................................................................................................28

## OTHER AUTHORITIES

U.S. Const. Art. III ......................................................................................................................5, 6, 7

California Constitution, Art. I, § I......................................................................................................29

## RULES

Fed. R. Civ. P.  8(a)(2) ........................................................................................................................9

Fed. R. Civ. P.  9(b) ..........................................................................................................................13

Fed. R. Civ. P. 12 ..............................................................................................................................31

Fed. R. Civ. P.  12(b)(1).......................................................................................................................8

# INTRODUCTION

This case is about an AI company that built a product to join private meetings and record every word, all without the consent of the people being recorded. People reasonably expect that when they enter a meeting, they are communicating only with the participants—not an AI bot silently capturing, transcribing, and feeding their conversations and voiceprints into commercial systems. Otter.ai broke that expectation by design. Its "Notetaker" joins meetings automatically, provides no legally meaningful notice before recording begins, and disables its own notification feature by default, leaving non-accountholder participants with no warning and no ability to opt out.

The sweep is broad: when an accountholder connects a calendar, Notetaker can join every scheduled meeting and record not just the accountholder, but every participant, including non-users, non-customers, and people who have never even heard of Otter.ai or its Notetaker. Their private conversations become Otter's training data.

Plaintiffs are among them. They participated in online meetings to discuss medical information, financial matters, workplace-related matters – the kinds of conversations people reasonably believe are private. They did not know Otter's AI bot had joined. They did not consent to having their words transcribed, their voices captured, or their conversations transmitted elsewhere for undisclosed commercial purposes. But that's what happened.

After learning that their voices and private conversations had been secretly captured, Plaintiffs brought this action. Otter responds with a sweeping bid for dismissal, insisting Plaintiffs suffered no concrete injury. But unauthorized recording of private conversations is itself a concrete and cognizable harm. Courts have said so repeatedly.

The federal wiretapping claim flows directly from the facts. Recording and transcribing conversations in real time is contemporaneous interception under the Electronic Communications Privacy Act, 18 U.S.C. § 2511. And the crime-tort exception applies because Otter's purpose in intercepting these communications was to commit the very criminal and tortious acts alleged here, including violations of the CFAA, CDAFA, and common law privacy torts, and a commercial

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

motive does not immunize an unlawful one. Accessing and transmitting data from Plaintiffs' devices without authorization, resulting in statutory loss, is also sufficient to state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

Otter also violated state law. Under the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632 ("CIPA"), a third-party that infiltrates a meeting without consent is not a "participant." It is an eavesdropper. Recording, transcribing, and transmitting conversations in real time to Otter's servers – all while the conversation is ongoing – fits squarely within the statute's broad prohibitions.  The Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"), applies for the same reason: Otter causes unauthorized access to data with resulting loss. The Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") applies because Otter collected voiceprints – protected "biometric identifiers" – without the informed written consent BIPA requires.

California common law claims also should proceed. People reasonably expect privacy in conversations about their health, finances, work, and other non-public matters. Secretly embedding a recording and extraction tool into those conversations is highly offensive by any reasonable standard. The Washington Wiretap Act, RCW § 9.73.030, is no different: intercepting private conversations on Zoom or Teams without consent violates the statute.

Finally, Otter continues to possess and profit from Plaintiffs' conversational and biometric data, and Plaintiffs are therefore entitled to declaratory relief to stop the ongoing harm. For these reasons and those set forth below, Defendant's motion should be denied in its entirety.[1]

## FACTUAL BACKGROUND

Otter.ai is an AI-powered meeting assistant that records, transcribes, and summarizes audio/video conversations in real-time. ¶¶ 1-2, 40, 47, 52.[2] Its Notetaker is a rapidly growing artificial intelligence-driven transcription and productivity platform that integrates directly with

---

[1] Plaintiffs withdraw the following claims: Conversion (Count IV), Trespass to Chattels (Count VII), the CIPA § 635 eavesdropping device claim (Count IX), the CIPA §§ 638.50–.56 pen register/trap and trace claim (Count X), and the claim for Larceny/Receipt of Stolen Property under Cal. Penal Code § 496 (Count XII). Plaintiffs reserve the right to seek leave to amend these claims should discovery warrant it.

[2] All "¶" citations are to the Consolidated Class Action Complaint (ECF No. 35).

2                                            Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

widely used videoconferencing services including Zoom, Google Meet, and Microsoft Teams. ¶¶ 34 & 39. It has processed over 1 billion meetings for 25 million users around the world since 2016, propelling Otter to over $100 million in revenue in 2025 alone. ¶¶ 36-38.

Notetaker is designed to automatically join virtual meetings linked to an accountholder's synced calendar, and once inside, it records and transcribes conversations in real time, takes screenshots of shared content and participants, and transmits the entire conversation to Otter's servers for processing, storage, and commercial use. ¶¶ 39-40, 49-50. Notetaker is not a passive feature controlled solely by the Otter accountholder; it enters meetings as a separate third-party participant and records conversations without obtaining informed consent from any, let alone all, non-account holder participants, including Plaintiffs. ¶ 42-44. Otter's Notetaker may even join when the accountholder is absent. ¶ 44. Plaintiffs—who are not Otter accountholders—participated in meetings during which Notetaker was present and recorded those meetings.  ¶¶ 135, 137, 146, 147, 158, 170, 183, 196, 205, 212 & 213. The recordings include highly sensitive communications: medical information for Theus (¶ 147), confidential work discussions for Ryan (¶ 159), and financial information for the Walkers. ¶¶ 171, 184.

Otter provides no audible alert, no automatic visual warning, no clear or reliable notice before recording begins, and no meaningful opportunity for non-account holder participants to object or opt-out of the recording. ¶¶ 43, 45-49. Other platforms like Zoom and Microsoft Teams prominently announce that a recording has started, automatically muting and turning off cameras for all participants until they consent to the recording of their video/audio. ¶ 46. Otter could likewise notify participants in advance of the meetings, or by playing a pre-recorded message before it begins to record, but it fails to do so. *Id.* Although Otter offers an option to email participants in advance, it is disabled by default unless a user activates it, leaving most non-accountholder participants with no notice at all. ¶¶ 49-51. In most cases, participants cannot remove the Otter Notetaker from the meeting and are often unaware of its presence while their communications are being recorded and transmitted in real time. ¶¶ 43-44, 50-51.

On rare occasions—such as if a participant happens to ask about Otter or Notetaker during

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

a meeting, Notetaker will post a chat message in response, identifying itself as an "AI assistant." ¶ 52. But that message omits the critical facts: Otter has been recording the entire meeting and transmitting the audio and visual data to its servers in real time, to process, analyze, and store the content (otherwise it could not generate a response at all) and it will continue to do so. ¶¶ 52-54. Meeting participants who join by phone lack meaningful opportunity to even see this limited note. ¶ 52. Most of the time, Otter Notetaker appears and then leaves as a participant without any message at all. ¶ 55. Otter's intentional design choices have led to repeated recording of sensitive meetings – including job interviews, medical consultations, and other confidential discussions—even after participants attempted to disable the Notetaker features. *See generally* ¶¶ 58-66.

Even accountholders often are unaware that Otter has joined and recorded meetings, including after efforts to prevent it from doing so. ¶¶ 58, 65, 75. Making matters worse, Otter extracts and stores identifying information about meeting participants—such as names and email addresses—from calendar invitations and meeting metadata, without the knowledge or consent of either the accountholder or the participants. ¶ 88. Otter then uses this information to send automated follow-up and promotional emails to non-users, encouraging them to sign up for Otter's services for its commercial benefit. ¶¶ 86-89, 96.   Otter further leverages captured conversations, voiceprints, and other personal identifiers to train its automatic speech recognition and AI machine learning model, turning deeply personal information into ongoing profit and deepening the harm to Class Members. ¶¶ 67-72.

## ARGUMENT

### I.    PLAINTIFFS HAVE ARTICLE III STANDING BECAUSE EACH PLAINTIFF HAS SUFFERED COGNIZABLE HARM.

Otter's Rule 12(b)(1) argument that "each of the Plaintiffs fail to sufficiently allege standing" rests on a fundamental error. Dkt. No. 42, Otter's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Class Action Complaint ("MTD"), at 5:9. It treats the sufficiency of Plaintiffs' factual allegations about the content of their conversations as a jurisdictional question. But the standing inquiry addresses whether Plaintiffs suffered a cognizable injury, not the extent to which the elements of the underlying claims are pled with sufficient detail.

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiffs plausibly allege concrete and particularized injuries-in-fact, and thus Otter's 12(b)(1) challenge fails.

### A.    Legal Standard for Article III Standing.

Otter's injury-in-fact argument fails because Plaintiffs allege unlawful recording and misuse of their conversational and speaker data with sufficient specificity to establish standing. In a class action, at the pleading stage, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc.); *see also Dir. Off. of Workers' Comp. Programs, U.S. Dep't of Lab. v. Perini N. River Assocs.,* 459 U.S. 297, 305(1983) (holding that the presence of at least one party with standing is sufficient to show that 'an admittedly justiciable controversy is' before the court). To establish Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). In assessing this requirement, courts first assume that the plaintiff will prevail on the merits of her claim. *See, e.g.*, *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims, so we must assume that the loan-repayment limitation . . . unconstitutionally burdens speech."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) ("[a]ssuming that the plaintiffs are correct that TransUnion violated its obligations" under federal law before engaging in standing analysis).

Although an injury "must be 'real' and 'not abstract' or purely 'procedural' . . . it need not be 'tangible.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018)). The Supreme Court has explained that "intangible harms" are concrete for standing purposes when they have a "close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341).

### B.  Plaintiffs Allege Concrete Injuries Sufficient to Confer Standing.

Plaintiffs here have sufficiently alleged intangible—yet unquestionably concrete—injuries

5

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

that satisfy Article III standing requirements because the unauthorized recording and transcription of private conversations constitutes a concrete harm historically recognized under common law privacy torts. The Ninth Circuit has explained that "[v]iolations of the right to privacy have long been actionable at common law." *Campbell v. Facebook Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (quoting *Eichenberger v. ESPN Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). *Spokeo* and *TransUnion* did not alter this analysis. *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 871 (N.D. Cal. 2022) ("[I]nvasion of privacy by itself is sufficiently concrete and particularized to confer Article III standing . . . . In the years between *Spokeo* and *Ramirez*, the Ninth Circuit found Article III standing in multiple privacy-related claims such as ECPA and [Stored Communications Act] claims."); *Hassid v. Alex & Ani, LLC*, No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238, at *5 (C.D. Cal. Jan. 20, 2026) ("[D]efendant's contention that plaintiff has not sufficiently alleged an invasion of the historically recognized right to privacy, is without merit. . . . A right to privacy encompass[es] the individual's control of information concerning his or her person." (internal citations omitted) (collecting cases)); *Wynne v. Audi of Am.,* No. 21-cv-08518-DMR, 2022 U.S. Dist. LEXIS 131625, at *11 (N.D. Cal. July 25, 2022*) (*"[T]he injury that gives rise to the alleged violation of the CCPA—that is, the 'invasion of [Wynne's] privacy interests' that occurred as a result of the theft of her PII, is a concrete injury that establishes Article III standing.").

Here, and contrary to Otter's assertions, each plaintiff has alleged participating in specific meetings – including conversations with medical or financial professionals and work colleagues – during which Otter intercepted and recorded their communications without consent. ¶¶ 135-137, 146-147, 170-171, 183-184, 196, 205, & 212-213. That is more than sufficient to establish a particularized injury. The Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) confirms rather than undermines this conclusion: the plaintiff in *Popa* lacked standing because only "her pet-store preferences and her street name" were intercepted, information bearing no resemblance to the medical, financial, and workplace communications at issue here. Plaintiffs allege interceptions of precisely the kind of sensitive, personal information that has traditionally supported privacy claims. ¶¶ 10-12, 14, 15, 50, 64, 69-72, 135-144, 146-157, 158-169,

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

170-182, 183-195, 196-211, 212-224.[3] Plaintiffs also allege that their identifying information was collected, which courts have found distinguishable from *Popa. See, e.g.*, *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025); ¶¶ 11, 77, 86, 88, 119.

Based on these factual allegations, Plaintiffs assert numerous individual and representative claims including violations of the CFAA, CDAFA, BIPA, and common law torts such as intrusion upon seclusion. Courts have repeatedly held that the harms giving rise to violations of privacy statutes confer Article III standing. *See, e.g., Campbell,* 951 F.3d at 1119 ("Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA . . . when it intercepted, catalogued, and used without consent URLs they had shared in private messages"); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025) ("Statutes like CIPA thus 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing'" (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598),  *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1013 (N.D. Cal. 2020) (harms that result from ECPA & CFAA violations sufficient to confer Article III standing); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (plaintiffs who brought claims under the Washington Privacy Act had alleged Article III standing); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 480 (N.D. Cal. 2021) (harm that gives rise to violation of CDAFA sufficient to confer Article III standing because the "claim[] relates to Plaid's alleged invasion of their privacy rights").

Otter's standing challenge is a merits argument in disguise. It contends that Plaintiffs lack standing because they have not described their conversations in sufficient detail, but the adequacy of factual allegations is a merits inquiry, not a jurisdictional one. The Ninth Circuit has repeatedly recognized, "[t]he question whether a plaintiff states a claim for relief typically relates to the merits of a case, not to the dispute's justiciability, and conflation of the two concepts often causes confusion." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011); *see also Davis v. U.S.*, 564 U.S. 229, 249 n.10 (2011) ("standing does not 'depend on the merits of a claim.'" (quoting

---

[3] Otter's refrain is that Plaintiffs did not plead the exact words that were spoken during the illicitly recorded meetings (and which were captured and used by Otter for other purposes). *See, e.g.*, MTD at 5:9-12. But neither the federal rules nor the law requires Plaintiffs to plead the precise words spoken on these recorded meetings.

7

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989))); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."). Accordingly, standing arises from the unauthorized recording of private conversations itself. Plaintiffs need not particularize the contents of their conversations to establish that a legally cognizable intrusion occurred. *In re Google Assistant Privacy Litig.,* 457 F. Supp. 3d 797, 819 (N.D. Cal. 2020) (finding Article III standing where plaintiffs alleged Google surreptitiously recorded their conversations without consent).

The same is true of Plaintiffs' BIPA claims. Plaintiffs Winston and the Walkers allege, on behalf of the Illinois Subclass, that Otter captured their voiceprints without informed written consent during Zoom meetings in Illinois. ¶¶ 178, 191, 206. The Ninth Circuit has held that the unauthorized collection of biometric identifiers is itself a concrete injury sufficient to confer Article III standing. *Patel v. Facebook, Inc*., 932 F.3d 1264, 1272-74 (9th Cir. 2019) (BIPA's procedural protections "protect against the very harm they were designed to avoid," and their violation "actually harms or presents a material risk of harm to the underlying concrete interest"). *Patel* controls. Voiceprints, unlike browsing history or shopping preferences, are immutable identifiers that cannot be changed once compromised. ¶¶ 12-13. Their unauthorized collection is not a procedural technicality. It is the injury BIPA was enacted to prevent. ¶¶ 12–13.

As a direct result of Otter's use of Notetaker to unlawfully record their private conversations, without consent, Plaintiffs suffered concrete and particularized injuries-in-fact and thus Otter's FRCP 12(b)(1) challenge should be denied.

## II.    PLAINTIFFS STATE VIABLE CLAIMS UNDER EACH CAUSE OF ACTION.

Otter's challenges to the legal sufficiency of Plaintiffs' claims also fail. As explained below, Plaintiffs plausibly allege violations of the ECPA and the CFAA; intrusion upon seclusion and invasion of privacy under both California and Washington law CIPA §§ 631 and 632; unjust enrichment; the CDAFA; the UCL; BIPA; the Washington Wiretap Act; and entitlement to declaratory relief under the Declaratory Judgment Act.

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**A.    Legal Standard for FRCP 12(b)(6).**

At the motion to dismiss stage, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). FRCP 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "Plausibility does not mean probability." *Gabrielli,* 2025 WL 2494368, at *5 (citing *Ashcroft*, 556 U.S. at 687 (noting that a claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")).

**B.    Plaintiffs State a Viable Claim Under the ECPA.**

Otter argues that the ECPA claim fails because Plaintiffs do not adequately allege acquisition of the contents of their conversations contemporaneously with their transmission. Otter further argues that the Plaintiffs fail to satisfy the crime-tort exception. Otter is wrong on both counts.

**1.    Plaintiffs allege contemporaneous acquisition of their communications.**

Section 2511(1)(a) of the ECPA prohibits the intentional interception of any wire, oral, or electronic communication. *See* 18 U.S.C. § 2511(1)(a). While the ECPA provides a "party exception" permitting one party to a communication to consent to its interception, that exception does not apply where "such communication is intercepted for the purpose of committing any criminal or tortious act." *Id.*, § 2511(2)(d). Otter challenges both the "interception" element and the crime-tort exception, but both challenges fail.

"Interception" of a communication is the acquisition of contents "contemporaneous with transmission." *Konop v. Hawaiian Air Lines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The standard

9                                              Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

for pleading this element is "not overly burdensome"; thus "allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (cleaned up). Plaintiffs more than meet that standard. The Complaint alleges that Otter Notetaker joins virtual meetings as a silent participant, records private conversations, and transmits the audio to its servers in real time to build a live transcription. *See, e.g.*, ¶ 41 (image from Otter website indicating that transcription occurs in "real-time"), ¶ 50 ("[w]hen Otter Notetaker joins a meeting, the application enters the meeting as a silent participant and begins recording audio, transcribing contents in real time while . . . capturing and sending data in real time to [Otter's] servers."). Those allegations plausibly plead interception.

These are not "threadbare" recitals of an ECPA element. *Compare* MTD at 8:2, *with*, *e.g.*, ¶¶ 41, 50, 139, 151, 163, 175, 188, 202, 217 (alleging "real time" and "in transit" transmission of contents of plaintiffs' and class members' communications to Otter's servers to build transcriptions of the same). Courts confronting identical "in transit" requirement have held that comparable real-time interception allegations suffice at the pleading stage. *See Campbell v. Facebook Inc.,* 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) (finding the "in transit" requirement met where plaintiffs alleged the defendant's "interception occurred in transit, in transmission, and/or during transfer of users' private messages."); *see also Krzyzek v. OpenX Techs., Inc.*, 2026 U.S. Dist. LEXIS 15195, at *19 (N.D. Cal. Jan. 27, 2026) (finding identical "in transit" requirement under CIPA satisfied where plaintiff alleged interceptions occurred while users communicated with a website); *Semien v. Pubmatic, Inc.*, 2026 U.S. Dist. LEXIS 15196, at *22 (N.D. Cal. Jan. 27, 2026) (same); *Ambriz v. Google, LLC*, No. 23-cv-05437-RFL, 2025 U.S. Dist. LEXIS 29609, at *13 (N.D. Cal. Feb. 10, 2025) (allegations that Google "transcribes calls in real time" and "grabs context of the conversation [to suggest] real-time . . . guidance" sufficient to withstand motion to dismiss).

        2.      <u>Plaintiffs plausibly allege application of the crime-tort exception.</u>

The crime-tort exception is satisfied at the pleading stage where, as here, a plaintiff has plausibly alleged that the defendant's interception was made in furtherance of conduct that

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

constitutes an independent tort or crime. *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (exception satisfied where plaintiffs adequately alleged violations of CDAFA and intrusion upon seclusion); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (because "plaintiffs' tort claims against Meta appear viable," there was "a not-insignificant chance" the exception applies). Plaintiffs have done exactly that here: they plausibly allege that Otter's interceptions were made in furtherance of violations of the CFAA, CDAFA, and common law torts including intrusion upon seclusion—claims addressed in detail below and each of which survives Otter's motion. That is sufficient.

Otter's only response is that it acted for "commercial purposes," which it contends are mutually exclusive with a criminal or tortious purpose. *See* MTD at 8:20-24. But that argument has been squarely rejected by the Ninth Circuit. In *Sussman v. Am. Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999), the court held that "[t]he existence of [a] lawful purpose would not sanitize a tape that was also made for an illegitimate purpose." A commercial motive and a tortious purpose are not mutually exclusive—indeed, as multiple courts have recognized, financial gain is often the very reason a tort is committed. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("Put simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-902 (C.D. Cal. 2024) (collecting cases for the proposition that a purpose focused on monetary gain does not undermine the crime-tort exception's application). Crimes and torts are often committed to make money, but that does not make them any less criminal or tortious. *See, e.g.*, *Krzyzek*, 2026 U.S. Dist. LEXIS 15195, at *21 ("The Court is not persuaded by the authorities OpenX cites to argue financial motive cannot constitute tortious motive."); *Semien*, 2026 U.S. Dist. LEXIS 15196, at *28 (same).

Because Plaintiffs have plausibly alleged that Otter's interceptions were made in furtherance of violations of the CFAA, CDAFA, and intrusion upon seclusion—each of which is addressed below and each of which survives Otter's motion—the crime-tort exception is satisfied and Plaintiffs' ECPA claim should proceed.

11   Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**C.    Plaintiffs Plausibly Allege a Viable CFAA Claim.**

Otter next argues that the CFAA claim fails because Plaintiffs did not adequately allege (i) that Notetaker accessed their computers; (ii) Otter possessed an intent to defraud the Plaintiffs and (iii) Plaintiffs suffered damages more than $5,000. *See* MTD at 9:5-12:3. Each argument fails: Notetaker interacts directly with participants' computer systems when it accesses their audio streams and conferencing applications in real time; the CFAA's "intent to defraud" element does not require common law fraud and is not subject to Rule 9(b); and Plaintiffs' losses—including investigation costs aggregated across the class—satisfy the monetary threshold..

1.    <u>Plaintiffs allege that Notetaker "accessed" computers within the meaning of the CFAA.</u>

The CFAA prohibits intentionally accessing a protected computer without authorization and thereby obtaining information. 18 U.S.C. § 1030(a)(2)(c). It separately prohibits doing so "knowingly and with intent to defraud" to "further[] the intended fraud and obtain[] anything of value." 18 U.S.C. § 1030(a)(4). Plaintiffs plausibly allege violations of both provisions. While the term "access" is left undefined, courts have explained that the term encompasses active communication or interaction with a computer. *See, e.g.*, *Van Buren v. United States*, 593 U.S. 374, 388 (2021) (noting that the term "access" refers to "the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases"); *United States v. Nosal*, 930 F. Supp. 2d 1051, 1063 (N.D. Cal. 2013) (relying upon Black Law's Dictionary to define "access" as "[a]n opportunity to or ability to . . . communicate with"); *Dresser-Rand v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013) (indicating that "access" means to "ha[ve] an interaction with a "computer[], computer system[], or network"); *see also MPC Containment Sys. v. Moreland*, No. 05 C 6973, 2008 U.S. Dist. LEXIS 60546, at *53-54 (N.D. Ill. July 23, 2008) (in line with *Nosal* and *Dresser-Rand,* refusing to hold that receiving information from a computer system through email, *i.e.*, a form of communication, cannot qualify as "access" under the CFAA as active interaction with a computer is indeed "access" under the same).

Otter misapprehends Plaintiffs' allegations that Otter uses emailed transcriptions of conversations recorded by Notetaker as a means of spreading the Otter Notetaker technology to

12    Case No: 5:25-cv-06911-EKL

unwitting participants. ¶¶ 89-94. When Notetaker joins a meeting, it does not just passively observe, it interacts directly with components of each participant's computer system: their microphone, audio stream, camera, and conferencing application. ¶¶ 90-94. Those are parts of the participants' computer systems within the meaning of *Van Buren*. See 593 U.S. at 388 (access means entering "the computer 'system itself' or a particular 'part of a computer system'"). Once inside the meeting, Otter records conversations in real time and transmits data to Otter's servers without authorization. ¶¶ 10, 41, 50, 88. That is the type of access to "a particular 'part of a computer system,' such as files, folders, or databases" that the CFAA covers. *See, e.g.*, *Van Buren*, 593 U.S. at 388 (internal citations omitted).

Thus, Otter "intentionally accessed Plaintiffs' and class members' protected computers without their authorization or consent, or in a manner that exceeded Plaintiffs' and class members' authorization . . . in contravention of the CFAA." ¶ 268. Technology that interacts with and transmits information from a participant's computer without authorization is actionable under the CFAA. *See, e.g.*, *Flextronics Int'l Ltd. v. Parametric Tech. Corp.*, No. 5:13-cv-00034-PSG, 2014 U.S. Dist. LEXIS 73354, at *2-3, 11-12 (N.D. Cal. May 28, 2014) (allegations that technology surreptitiously transmitted data from plaintiff's computer without authorization sufficient to survive motion to dismiss); *PQ Labs, Inc. v. Qi*, 2014 U.S. Dist. LEXIS 11769, at *27-32 (N.D. Cal. Jan. 29, 2014) (denying summary judgment where plaintiff received phishing emails which installed malicious code).

2.      Otter unquestionably intended to access Plaintiffs' data.

Otter's attempt to impose a heightened fraud pleading standard is equally misplaced. Plaintiffs' CFAA claim does not sound in fraud and therefore is not subject to FRCP 9(b). *Multiven, Inc. v. Cisco Sys.*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010) ("For purposes of the CFAA, 'the term 'defraud' . . . simply means wrongdoing and does not require proof of common law fraud.'") (cleaned up) (quoting *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 445 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008)). Rather, courts apply a FRCP 9(b) pleading standard to the CFAA only where the theory hinges on fraudulent inducement or misrepresentation. *See NetApp,*

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Inc. v. Nimble Storage*, 41 F. Supp. 3d 816, 833-34 (N.D. Cal. 2014); *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009). But that is not the theory here because Plaintiffs do not allege reliance on false statements; instead they allege unauthorized access and intentional interception of personal data, which is subject to the ordinary plausibility standard. Under that standard, Plaintiffs' detailed allegations of a deliberate scheme to capture participants' personal information without consent and use it to train Otter's speech recognition and machine learning systems describe purposeful, knowing conduct that satisfies the CFAA's intent element. ¶¶ 69–85.

Plaintiffs' allegations go *well beyond* what is required to allege the CFAA's intent element. The decision in *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) is illustrative. There, consumers alleged Apple released a software update that "would 'brick' (render completely inoperable)" iPhones that had been modified to use apps in which Apple did "not have a financial interest." *Id.* at 1295, 1296. The Court held that the consumers "adequately alleged the requisite intent" under the CFAA where they asserted Apple merely "was aware of [the software update's] potential ramifications" and still intentionally released it. *Id.* at 1308. Because the CFAA claims in *Apple* passed the pleading stage, Plaintiffs' CFAA claims must as well, given that Plaintiffs' intent allegations are far more robust.

Finally, Otter's argument that Plaintiffs fail to state a claim because Notetaker returns information to users has no basis in law, logic, or fact. MTD at 11:9-13. As Plaintiffs allege, Otter continues to store their conversational data and voiceprints, and still actively profits from them. The information therefore has not been returned. ¶¶ 67-72, 88, 97, 122-124. Regardless, one who steals or compromises the integrity of a user's information cannot avoid liability simply by returning a transcript or a copy of what was taken. If this reasoning were valid, thieves could always mount a defense based on their intention to replace property with an equivalent or approximation of what was taken. *See, e.g.*, *People v. Hill*, 17 Cal. 4th 800, 852 (1998) (stating "it is no defense [to robbery] that the property taken was restored").

3.    <u>Plaintiffs plausibly allege losses under the CFAA.</u>

14                                          Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

To allege "loss" under the CFAA, a plaintiff must allege "loss to 1 or more persons during any one-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(g). The CFAA defines "loss" as "any reasonable cost to the victim" and lists as examples "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "A plaintiff may aggregate individual damages over the putative class to meet the damages threshold if the violation can be described as 'one act.'" *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012); *see also Bowen v. Porsche Cars, N.A.*, 561 F. Supp. 3d 1362, 1371-72 (N.D. Ga. 2021) (holding that denying aggregation "would lead to the absurd result" that mass unauthorized access causing small per-device harm would escape the statute entirely).

Courts in the Ninth Circuit recognize as "loss" "costs spent analyzing, investigating, and responding to defendant's unauthorized access," which constitute "cost of responding to an offense." *Ticketmaster LLC v. Prestige Entm't West, Inc.*, 315 F. Supp. 3d 1147, 1173 (C.D. Cal. 2018) (citing *Facebook, Inc. v. Power Ventures, Inc*., 844 F.3d 1058, 1066 (9th Cir. 2016)). At the pleading stage, Plaintiffs need only allege facts allowing a plausible inference of a loss; they do not need to itemize or fully explain the losses. *See Ticketmaster*, 315 F. Supp. 3d at 1173 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Plaintiffs' losses extend beyond "loss of value of personal information." The Complaint states that their losses "include[s] the loss of their privacy interest in and control over their data," not that it is the only loss incurred. ¶ 271; *see also NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (denying motion to dismiss where plaintiff "alleged that defendants impaired the availability of [plaintiff's] data, thereby causing damage within the meaning of the CFAA"). Moreover, the Complaint alleges that Plaintiffs had to analyze and investigate (and will continue to investigate) Otter's activity on their computer systems as a response to the unconsented use of the Otter Notetaker. *See, e.g.*, ¶¶ 144, 156, 168, 210, 222 (describing how Plaintiffs reacted when they "learned" their conversations were recorded without

15     Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

their consent). The same goes for class members whose loss resulted from analyzing, investigating, and responding to Otter's unauthorized access to their computers may be aggregated to a sum far in excess of $5,000 in value. This is because the Otter Notetaker resulted in damages of a uniform nature. *Cf. In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) (quoting & citing *In re Toys R Us, Inc. Privacy Litig.*, 2001 WL 34517252, at *11 (N.D. Cal. 2001)) (CFAA claims permitted to proceed based on aggregating loss to meet the $5,000 minimum where "those damages arose from the same act by a defendant"). Thus, the Court can reasonably infer that Otter caused more than $5,000 in losses on a class-wide basis.

**D.    By Joining Meetings Without Consent, Recording Conversations, and Transmitting the Contents to Its Servers, Otter Intercepted Plaintiffs' Communications in Violation of Cal. Penal Code § 631(a) and § 632.**

1.    <u>Plaintiffs State a Viable § 631 Claim.</u>

CIPA "broadly prohibits the interception of wire communications and disclosure" of their contents. *See* Cal. Pen. Code § 631(a). Otter did exactly that: its Notetaker joined Plaintiffs' meetings without their consent, recorded conversations, transcribed them in real time, and transmitted them to Otter's servers for its commercial use and training of its AI models. *See* ¶ 8. For the named Plaintiffs, those conversations included discussions with a medical professional (Theus) and work colleagues (Ryan). At the pleading stage, that is more than enough.

Section § 631(a) covers three distinct forms of misconduct: (i) "'intentional wiretapping,' (ii) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' [i.e., eavesdropping,] and (iii) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598-RBM-JLB, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024). *Krzyzek*, 2026 U.S. Dist. LEXIS 15195, at *14 ("the third clause requires proving a violation of the first or second clauses" but each of "these clauses are independent bases for liability"). And the statute must be read "broadly:" the California Supreme Court held that CIPA's provisions are interpreted in light of their sweeping "privacy-protecting statutory purpose[]." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *5 (9th Cir. May 31, 2022).

16                                    Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Otter's conduct falls squarely within the second and third clause of § 631(a) because its Notetaker joins meetings without participants' consent, records and transcribes conversations in real time, and transmits the communications to Otter's servers for processing, storage, and AI training. That is textbook eavesdropping, followed by use of the intercepted communications. Courts routinely allow CIPA claims to proceed where a third-party technology captures and transmits the contents of users' communications in real time and transmits them to its own servers. *See Krzyzek,* 2026 U.S. Dist. LEXIS 15195, at *15 (denying dismissal of CIPA claim where defendant intercepted plaintiffs' keystrokes while searching for articles on various websites); *Ambriz*, 2025 WL 830450, at *4 (similar, where Google intercepted and later analyzed calls plaintiffs made to third parties); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) (similar, where Salesforce intercepted chats on third-party websites); *Gladstone v. Amazon Web Servs*., 739 F. Supp. 3d 846, 849 (W.D. Wash. 2024) (similar where defendant's software was used to "record and analyze callers' voice and conversations"). Whether the intercepted content takes the form of keystrokes, chat messages, or spoken words, these courts have consistently held that real-time capture and transmission of communication contents satisfies the interception element, and Plaintiffs' allegations here are at least as strong.

        *a.  Plaintiffs allege that Otter attempted to learn the contents or meaning of communications in real-time.*

The second clause of § 631(a) requires: "(1) the 'absence of consent' of all parties to the communication;" (2) "eavesdropping by a third-party nonparticipant[;]" and (3) "an interception of the communication 'while in transit.'" *Smith v. Yeti Coolers, LLC*, 754 F.Supp.3d 933, 940 (N.D. Cal. 2024) (citation omitted). Otter doesn't challenge sufficiency of the first element. Its remaining arguments, that it was a participant and that no interception occurred in transit, fail.

Otter argues it was a party to the conversations. *See* MTD at 19:25-20:3. But that argument does nothing more than impermissibly recast the well-pled facts in the Complaint. Indeed, as Plaintiffs specifically allege, Otter is a separate third-party entity that joins meetings, records and transcribes conversations, and sends the contents, transcript, and the entire recording to its own servers for processing, commercial use, and training of its AI models. ¶¶ 6, 81-82. It doesn't engage

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

as a communicant—it joins solely to capture and extract the contents for its own commercial purposes. *See* ¶¶ 4, 6, 42-43, 67-72, 81-83. Under any common-sense understanding and the facts pled, Otter's conduct is that of an eavesdropper or wiretapper, not a participant. The law also does not support Otter's position. Courts repeatedly reject the argument that technology providers are parties to communications when they independently intercept, capture, or analyze the content of communications. In *Smith*, for example, the court held that a third-party tracker was **not** a participant because it had a "distinct commercial purpose." 754 F. Supp. 3d 933 at 940. Likewise, in *Ambriz v. Google*, defendant's use of plaintiffs' data to train its AI systems rendered it a third party under § 631(a). 2025 WL 830450, at *8; *see also Yockey,* 745 F. Supp. 3d at 952 (same). The same is true here. Otter's appearance on the call as someone's Notetaker does not change this analysis. A wiretapper does not become a "participant" simply by adopting an innocuous label while recording the conversation without consent and using it for its AI training. Whether Otter functioned as a participant or a third-party wiretapper is, at a minimum, "a question of fact for a jury, best answered after discovery into the storage mechanics" of Otter's technology. *See Yoon v. Lululemon United States,* 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021).

Otter's authorities are readily distinguishable. In *Graham* and *Swarts,* the defendants operated the websites with which the plaintiff was directly communicating. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *Swarts v. Home Depot, Inc.,* 689 F. Supp. 3d at 744–45 (N.D. Cal. 2023). That is certainly not the case here, where the conversations occur between meeting participants (on platforms such as Zoom and Microsoft Teams), which Otter intercepts through the Notetaker. Otter's reliance on *In re Facebook Internet Tracking Litig.* is particularly troubling given that the Ninth Circuit reversed that decision, holding that Facebook was not exempt "from liability as a matter of law under . . . CIPA as a party to the communication" when it compiled users' browsing histories through duplication and collection of their web requests). *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 608.

Otter next argues the Complaint fails to allege interception "in transit." But as discussed section II(B), above, Plaintiffs allege exactly that. Because the communications are captured in real

18

time, while a meeting is ongoing, the interception occurs contemporaneously with the transmission of the communication, which is precisely what § 631(a) regulates. *See, e.g., Campbell*, 77 F. Supp. 3d at 848 ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case."); *Ambriz*, 2025 WL 830450, at *4 (plaintiffs adequately alleged interception "in transit" because defendant "monitor[s] the state of the conversation", "transcribes the conversation in real time," and that the defendant "learned the content of their communications" and "received information while the call was ongoing"); *Yockey*, 745 F. Supp. 3d at 953 ("[t]he reasonable inference here, because [the defendant] 'apparently receives the chat messages either before or simultaneously with' its clients--the intended recipients, is that [the defendant] intercepts these messages").

The cases Otter relies on are inapposite. In each, the court dismissed claims where the plaintiff merely recited the "in transit" requirement without explaining how the interception occurred. That is not the case here. *See Esparza v. Gen Digital, Inc.*, 2024 WL 655986, *4 (C.D. Cal. Jan. 16, 2024) (plaintiff alleged no facts about what was intercepted, when and how it occurred); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (complaint "was entirely speculative, "conclusory" as to how interception occurred); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (similar); *Swarts*, 689 F. Supp. 3d at 746 (timing of the interception was unclear).

### b.  *Plaintiffs have adequately alleged a violation of § 631(a)(iii).*

Plaintiffs also allege a violation of Cal. Penal Code § 631(a)(iii), which prohibits "attempting to use or communicate information obtained" through unlawful interception. As discussed above, Otter records and transcribes meeting conversations, extracts speaker data, transmits the communications to its servers in real time, then uses the recording/voice/transcript for analysis and improvement of their AI models, and monetizes this data indefinitely. ¶¶70-71, 97-98, 239. Otter offers no independent challenge to the use element. It simply reiterates its failed

19                    Case No: 5:25-cv-06911-EKL

interception argument. Because Plaintiffs plausibly allege unlawful interception, their § 631(a)(iii) claim survives as well.

### 2.    Plaintiffs Adequately State a § 632 Claim.

"To state a claim under § 632, Plaintiff must show there was (i) an electronic recording of (ii) a confidential communication and (iii) all parties did not consent." *Smith*, 754 F.Supp.3d at 943. Plaintiffs plausibly allege each element.

For the same reasons that Otter is a third-party eavesdropper rather than a participant under § 631(a), it is liable as an eavesdropper under § 632. Section § 632 prohibits, "eavesdropping on or recording confidential communications." "California courts interpret 'eavesdrop,'" to mean "a third party secretly listening to a conversation between two other parties." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018) (quoting *Thomasson v. GC Servs. Ltd. P'ship.*, 321 Fed. App'x 557, 559 (9th Cir. 2008)).

The first and third elements are not genuinely disputed. The Complaint alleges that Otter recorded Plaintiffs' conversations and that Plaintiffs did not consent to Otter's recording. ¶¶43-44, 50, 297. At the pleading stage, those allegations are sufficient. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937  (N.D. Cal 2023) (§ 632 adequately pled where defendant "has not shown, as a matter of law, that all parties consented to" the recording).

Otter's remaining argument that the conversations were not "confidential" also fails. A communication is "confidential" when a party "'has an objectively reasonable *expectation* that the conversation is not being overheard or recorded.'" *Smith*, 754 F. Supp. 3d at 943 (emphasis added) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P. 3d 575, 576 (Cal. 2002) (endorsing this standard)); *see also Kight v. CashCall, Inc.*, 200 Cal.App.4th 1377, 1395 (2011) (defendant could violate § 632 even though individual secretly monitoring the call was employed by the same entity as the known party to the call). In other words, it is not the *topic* of the conversation that matters, but rather the *expectation* of privacy that the conversation is not being secretly recorded. *Id*. at 1397 (stating that a "communication is 'confidential'" under § 632 "if a party to the conversation had an objectively reasonable expectation that the conversation was not

20                                        Case No: 5:25-cv-06911-EKL
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

being overheard or recorded").

The Complaint plausibly alleges exactly that, namely that Plaintiffs believed they were speaking only with the other meeting attendees, not a separate company capturing, transcribing, and analyzing their private conversations for AI training, and reasonably expected their discussions were not secretly recorded. ¶¶ 4-8, 14, 137, 149, 161. For example, Plaintiff Theus alleged that she "used Zoom to communicate with a medical professional," about "deeply personal and private medical information." ¶ 147. Courts recognize that "health-related" communications "are almost uniquely personal." *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. Plaintiff Ryan discussed sensitive work matters with a colleague. Plaintiff Brewer likewise alleged that he had no reason to suspect Otter was recording or retaining his private conversations. ¶¶ 137, 149, 159, 161. Across any topic the reasonable expectation that the conversation was confidential between participants only suffice. *Kight*, 200 Cal.App.4th 1377, 1395.

### E.  Plaintiffs State a Claim for Violations of the Comprehensive Computer Data Access and Fraud Act.

#### 1.  Plaintiffs adequately allege that Otter accessed their data.

Plaintiffs have alleged sufficient facts to establish CDAFA liability because they alleged that: (i) Otter "knowing[ly] accessed" their data, computer, computer system, or computer network without permission and that (ii) plaintiffs have suffered compensable loss or damages as required under Cal. Penal Code §§ 502(c)(1)(2)(7), (e)(1). *See* ¶¶ 137-143 (Otter illegally accessed Brewer's conversational data without consent); ¶¶ 147-153 (same for Theus's conversational data, including private medical information); ¶¶ 159-165 (same for Ryan's conversational data, including private work-related discussions). This is sufficient at this stage.

Otter insists that plaintiffs are required to establish that it "access[ed]" their computers—defined as "gain[ing] entry to instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." MTD at 24:22-25:8. But Otter cites no authority for this interpretation, and courts have squarely rejected it. The statutory term "access" (§ 502(c)(1) & (2)) refers to the data on the computer or device. *Biden v. Ziegler* is on point. In rejecting the same

21                                                    Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

argument Otter raises here, the court explained: "The statute specifically refers to '***data*** from a computer,' and here Plaintiff plainly asserts a violation of its data by Defendants." 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) (emphasis original) (internal citations omitted); *see also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1049 (S.D. Cal. 2023) ("[T]he phrase 'without permission' is not limited to conduct that circumvents a device barrier or 'hacks' a computer system."); *Esparza v. Kohl's, Inc.,* 723 F. Supp. 3d 934, 944-945 (S.D. Cal. 2024) (finding plaintiffs could proceed under the CDAFA based on claim that defendant surreptitiously extracted personal information, such as IP addresses, from plaintiffs and rejecting claim that technical circumvention was necessary).

### 2.   Plaintiffs Suffered Compensable Losses Under CDAFA.

The CDAFA provides that the owner of data who suffers "damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." *Biden*, 737 F. Supp. 3d at 976; Cal. Penal Code § 502(e)(1). In *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit held that a plaintiff may maintain a claim under the CDAFA so long as he or she has a stake in the defendant's "unjust enrichment." 956 F.3d at 599-600. It further found the standard met in that case where plaintiffs alleged that a) their browsing data had value; b) defendant used the data without plaintiffs' permission; and c) defendant profited from the use of such data. *Id.* at 600-01.

That is precisely what Plaintiffs have done here. Plaintiffs alleged that their data had value (¶¶ 103-115); that Otter accessed that data without consent (¶¶ 141-143, 53-155, 165-167) and that Otter was unjustly enriched by acquiring that data without permission and using it for Otter's own financial benefit. ¶¶ 144, 156, 168, 327. Plaintiffs' allegations regarding Otter's exploitation of their valuable data satisfy their obligation to plead harm and loss resulting from a violation of the CDAFA. *Esparza*, 723 F. Supp. 3d at 945 (damages allegations sufficient where plaintiff "allege[d] there is a market for his data that Defendant and ASI allegedly profit from.").

In response Otter attempts to graft onto the CDAFA a requirement that the Plaintiff must expend resources to verify whether their devices were altered or damaged, and in support cites to

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024). MTD at 25:15-24. But *Doe I* is readily distinguishable, because plaintiffs alleged no actual economic harm, relying instead on claims of "lost storage, disk space, and performance, and . . . inability to communicate," along with conclusory allegations that they expended time and resources to investigate the defendant's conduct. *Id*. at 846-47. Although Section 502(e)(1. recognizes investigative expenditures as compensatory damages, *Doe I* found those allegations insufficient. 741 F. Supp. 3d at 847. In contrast, Plaintiffs here have pled that Otter was unjustly enriched by acquiring their valuable data without consent and using it for Otter's own financial benefit – an injury courts routinely recognize. *See In re Facebook, Inc. Internet Tracking Litig*, 956 F.3d at 599-601 (plaintiffs have adequately alleged that Meta's tracking and collection practices would cause harm or material risk of harm to their interest in controlling their personal information Meta compiled from users browsing histories; *Biden*, 737 F. Supp. 3d at 976 ("Plaintiff asserts, as the owner of the data, he has suffered damages caused by the Defendant in an amount to be proven in trial. Plaintiff alleges entitlement to damages, injunctive and other equitable relief. Examining Plaintiff's Complaint in its entirety, the Court finds that damages have been asserted.") (internal citations omitted).

### F.     Plaintiffs Adequately Plead a UCL Claim.

Otter argues that Plaintiffs cannot bring their claim for Unfair Business Practices under California Business & Professions Code § 17200, *et seq.* (the "UCL claim") because they have an adequate remedy at law. But as discussed below, Plaintiffs may plead claims in the alternative at this stage. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015). Plaintiffs specifically plead that they suffered a "harm for which there is no adequate legal remedy" because "[d]amages cannot return the conversational data that Otter now has at its disposal for its ASR and machine learning purposes, and in turn, a legal remedy is inadequate to ensure the current protection and safety of Plaintiffs' and California Class members' conversational and Speaker Data, as well as the protection and safety of such data going forward." ¶¶ 359-360; *see Brown v. Van's Int'l Foods, Inc*., No. 22-cv-00001-WHO, 2022 WL 1471454, at *12 (N.D. Cal. May 10, 2022) ("[i]t will suffice at the pleading stage for plaintiff to plead that her legal remedies are inadequate or

23

plead equitable claims in the alternative because her legal remedies are inadequate.")

Second, as required under the UCL, Plaintiffs do allege an actual loss of "money or property" because of Otter's allegedly violative conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–22, 120 (2011) (to satisfy the statutory standing requirement under the UCL, a plaintiff must merely suffer an injury in fact that is an "economic injury."). Plaintiffs plead a loss of "personal information, conversational data, and Speaker Data" which includes information such as their voiceprints, conversations, and participants' identifying information. *See* ¶¶ 76-77, 81, 83, 86, 359. Courts recognize that such information is property with economic value. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (finding plaintiffs who suffered a loss of their personal information suffered economic injury and had standing); *In re Facebook Privacy Litigation*, 572 F. App'x 494, 494 (9th Cir. 2014) (concluding plaintiffs had plausibly alleged that they experienced harm when their personal information was disclosed in a data breach and lost its sales value); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (holding that plaintiffs had adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (plaintiffs plausibly alleged injury from the loss of value of their PII). Accordingly, Plaintiffs' UCL claim must stand at this stage.

### G.    Plaintiffs Allege Viable BIPA Claims.

Plaintiffs Michael Walker, Jasper Walker, and Nadine Winston, representing the Illinois Subclass, adequately state BIPA causes of action. ¶¶ 170-211. BIPA is an Illinois law that prohibits companies from collecting individuals' biometric data without their express written consent. *See* 740 ILCS § 14/15. Plaintiffs allege that Otter violated BIPA by collecting their "voiceprints"—a form of biometric data—without their consent. ¶¶ 178, 191, 206. Otter argues BIPA does not apply "extraterritorially" and that Plaintiffs fail to allege their voiceprints qualify as biometric data. *See* MTD at 31:10-21. Otter is wrong on both points.

1.    Otter's extraterritoriality argument does not defeat Plaintiffs' BIPA claims.

BIPA only covers violations that occur in Illinois. *Monroy v. Shutterfly, Inc.*, 2017 WL

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

4099846, at *5 (N.D. Ill. Sept. 15, 2017). Here, as further explained below, (a) Plaintiffs allege that Otter's violations *did* occur in Illinois, so the extraterritoriality defense fails outright on the facts pled; and (b) even if Otter were able to develop facts otherwise in discovery, courts recognize it is not a basis on which to dismiss claims at the pleading stage.

> *a.  Plaintiffs sufficiently allege that Otter's violation occurred primarily and substantially in Illinois.*

BIPA applies, over extraterritoriality objections, where "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Id.* (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 854 (2005). Plaintiffs allege exactly that. They are Illinois residents. ¶¶ 23–25. They participated in virtual meetings while physically present in Illinois. ¶¶ 170, 183, 196. And Otter collected their biometric data during those meetings, through devices that were—by necessity—also present in Illinois. *See id.* Plaintiffs, alleging that Otter failed to obtain the requisite written consents from them before collecting the data, are entitled to the reasonable inference that Otter's violation occurred in Illinois. *See Mahmood v. Berbix, Inc.*, No. 22 C 2456, 2022 U.S. Dist. LEXIS 153010, at *4 (N.D. Ill. Aug. 25, 2022) ("She specifically alleges she is an Illinois resident and SilverCar has significant operations in Illinois, leading to the reasonable inference that she uploaded her Illinois Driver's License on Berbix's platform while she was in Illinois."); *see* ¶¶178–79, 191–92, 203. Based on similar allegations, multiple courts have found that BIPA violations occurred "primarily and substantially" in Illinois. *E.g.*, *Davis v. Jumio Corp.*, 2023 WL 2019048, at *6 (N.D. Ill. Feb. 14, 2023); *Monroy*, 2017 WL 4099846, at *1.

*Monroy* is instructive. There, the plaintiff sued Shutterfly, Inc. under BIPA for allegedly using "facial recognition software" to collect biometric data from a photograph the plaintiff had uploaded to Shutterfly's website. *Monroy*, 2017 WL 4099846, at *1. Because Shutterfly was headquartered in California it argued for dismissal on extraterritoriality grounds. *Id.* at *6. But the Court rejected the argument. *Id.* It noted that the at-issue photo "was uploaded to Shutterfly's website from a device that was physically located in Illinois" and was "uploaded by a citizen of Illinois." *Id.* And the plaintiff "maintain[ed] that the actual violation of the statute took place in Illinois because that is where Shutterfly failed to obtain the requisite release prior to allegedly

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

collecting [the plaintiff's] biometric data." *Id.* These factors, combined, prevented dismissal on extraterritoriality grounds. *See id.* So too here.

### b. *Applying the extraterritoriality doctrine would be premature.*

Otter's argument fails on the facts alleged and should also be rejected as premature. The application of "the extraterritoriality doctrine is a fact intensive inquiry best left for summary judgment." *Mahmood*, 2022 U.S. Dist. LEXIS 153010, at *4 ; *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1122 (N.D. Ill. 2022) (same). As a result, courts often deny motions to dismiss premised on the extraterritoriality doctrine, even if they "acknowledge[] that discovery may reveal that the connection to Illinois is sufficiently tenuous as to warrant revisiting the matter" after discovery. *Davis*, 2023 WL 2019048, at *7.

None of Otter's authority shows otherwise. *McGovern v. Amazon* and *Campana v. Nuance Communications* simply show that a plaintiff's Illinois residency *alone* is insufficient to trigger BIPA's protections. *McGovern*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) ("residency, standing alone, is not sufficient to establish" that a BIPA violation occurred "primarily and substantially" in Illinois); *Campana*, 2024 WL 2809838, at *3 (N.D. Ill. Mar. 8, 2024) (one's "physical presence in Illinois," alone, is insufficient to invoke BIPA). As for *Vance v. Google*: it dismissed a BIPA claim where the plaintiff failed to allege that the defendant "ever interacted with them or any other person or entity in Illinois" when it collected biometric data. 2024 WL 1141007, at *3 (N.D. Cal. Mar. 15, 2024). Here, Plaintiffs allege more than Illinois residency alone—they allege that Otter, through its software, operated in Illinois and pulled biometric data from live meetings that occurred in Illinois. *See* ¶¶ 170, 178–79, 183, 191–92, 196, 203. Consequently, *McGovern*, *Campana*, and *Vance* are inapposite.

### 2. Plaintiffs sufficiently allege that Otter collected their biometric data.

Otter also asserts that the information it collected does not qualify as biometric data. MTD at 31:3-21. Otter says that, for information to qualify as biometric data, BIPA "require[s] that the collected information can identify a particular individual." *Id.* Otter then claims that Plaintiffs fail to allege that the data Otter collected "could identify them." *Id.* However, Plaintiffs specifically

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

allege that the "voiceprints" Otter collects from individuals "can identify the same individuals" in "future meetings." ¶ 11. Plaintiffs also allege that, when Otter collects voiceprints, it "associates [them] with individuals' identities," including their "names." ¶¶ 117–119. And Plaintiffs explicitly allege that Otter did so with the voiceprints it collected from them, stating that Otter "linked [Plaintiffs' voiceprints] to the Plaintiffs' names during the meetings in which Plaintiffs participated." ¶ 123. The Court must accept these allegations "as true." *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1254 (N.D. Cal. 2022). It should ignore Otter's argument that its software did not associate Plaintiffs' voiceprints with their identities or their names. MTD at 31:10-21.

In any event, even if Otter did not associate Plaintiffs' voiceprints with their names, it still collected biometric data falling within BIPA's protections. The data that BIPA protects includes both "Biometric Information" and "Biometric Identifiers." 740 ILCS § 14/10. For data to qualify as "Biometric Information," it must be "used to identify an individual." *Id.* But that requirement does not limit the definition of "Biometric Identifiers." *Id.* "Biometric Identifiers" include any "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" regardless of whether such data is used to identify an individual, and regardless of whether it is associated with an individual's name. *Id.* So, to allege the collection of "Biometric Identifiers," Plaintiffs need only allege that Otter collected their unique voiceprints—they need not also allege that Otter associated those voiceprints with Plaintiffs' names.

This District has explicitly rejected the argument that "a biometric identifier" must "link to" "identity information" like a "name [or] email address" to qualify for BIPA's protections. *See Colombo v. YouTube, LLC*, 679 F. Supp. 3d 940, 944 (N.D. Cal. 2023). The Northern District of Illinois, which frequently oversees BIPA suits, has also rejected the same argument. *See Castelaz v. Estee Lauder Cos., Inc.*, 2024 WL 136872, at *6 (N.D. Ill. Jan. 10, 2024) (refusing to dismiss a BIPA claim even though a complaint did "not allege that Plaintiffs provided [Defendant] with any identifying information, such as names and email addresses . . . that could connect [Plaintiffs'] facial geometry scans to Plaintiffs' identities"). In sum, even if Otter's software did not associate individuals' voiceprints with their names, Plaintiffs' BIPA claims would remain viable because

27                                                    Case No: 5:25-cv-06911-EKL
**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Otter's software collects "Biometric Identifiers" subject to BIPA's protections.

**H.    Plaintiff Dolan Plausibly Alleges Violation of the Washington Wiretap Act.**

RCW § 9.73.030(1) prohibits the interception or recording of private communications and conversations without all-party consent. As Otter recounts, a communication is "private" when the parties manifest (i) a subjective intention that it be private and (ii) where that expectation is objectively reasonable. *See* MTD at 32:1-9 (citing *State v. Modica*, 164 Wash. 2d 83, 88 (2008)).

Here, Plaintiff Dolan participated in a Zoom call, a conversational format akin to a telephone call, and furthermore, he was "frustrated, embarrassed, and stressed" when he discovered that the call had been recorded and transcribed. ¶¶ 212, 222. These are indicia of an intent to keep his communications private. *See Modica*, 164 Wash. 2d at 88 (applying presumption that it is the subjective intention of parties that a call remain private); *cf. State v. Fields*, 31 Wash.App. 687, 711 (2024) (holding that defendant's statements that he did not want call to be recorded constituted evidence of subjective intent for communications to remain private).

Plaintiff Dolan had an objectively reasonable expectation of privacy based on the facts alleged in the Complaint. Accordingly, just as Otter's argument against the adequacy of Plaintiff Dolan's intrusion upon seclusion claim fails, so too does its argument against the adequacy of the Washington Wiretap Act claim.

**I.    Plaintiffs Adequately State a Claim for Declaratory Judgment.**

Plaintiffs adequately allege a claim under the Declaratory Judgment Act. The Act requires a "definite and concrete," dispute between parties with adverse legal interests that is "real and substantial" and is capable of resolution through specific relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Plaintiffs satisfy that standard.

First, Plaintiffs allege that Otter unlawfully recorded, stored, and continues to profit from their conversational data, while concealing with whom it shares the data. ¶¶ 87-88, 101, 115. Without declaratory relief, Otter's practices will continue, and Plaintiffs and the public have no way to ensure their data is deleted or not shared with third parties. Indeed, Otter admits that neither users nor speakers can remove their speaker data, leaving the plaintiffs and class members with no

28

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

option other than seeking relief from this Court. ¶ 121.

Furthermore, a real and substantial controversy exists because Otter continues to collect, store, and use Plaintiffs' confidential, biometric, voice data, and other forms of personal information without consent. Plaintiffs plead that the recorded conversations included discussions about medical treatment, financial discussions, sensitive work-related calls, and other sensitive types of communications individuals reasonably expect will remain private. ¶¶ 147, 159, 171 & 184.

Finally, the Court can grant concrete relief. Plaintiffs seek an order requiring Otter to cease its unlawful recording practices, delete the improperly collected data, stop sharing it with third parties, and end its continued processing, AI training, and monetization of that data. *See Vishal Shah v. Capital One Fin. Corp.,* 768 F. Supp. 3d 1033, 1052 (N.D. Cal. 2025) (declining to dismiss declaratory judgment where CIPA and ECPA claims survived); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024) ("Plaintiffs' allegations of continuing inadequate security measures are sufficient to maintain their claim for declaratory relief."); *Cottle*, 536 F. Supp. 3d at 491(finding that other courts in the Northern District have denied "motions to dismiss equitable claims because plaintiffs may pursue alternative remedies at the pleading stage"). Because Plaintiffs allege and Otter does not dispute that it continues to possess and profit from Plaintiffs' data, this case presents the ongoing, concrete dispute the Declaratory Judgment Act is designed to resolve. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("[d]ismissal of the declaratory judgment relief would be premature" where defendant possesses plaintiffs' PII).

### J. Plaintiffs Plausibly Allege Viable Claims of Intrusion upon Seclusion and Invasion of Privacy Because Defendant Breached Their Reasonable Expectation of Privacy.

Plaintiffs Brewer, Theus, and Ryan (the "California Plaintiffs") assert claims for intrusion upon seclusion and invasion of privacy under the California Constitution, Art. I, § I. Plaintiffs address these claims, which are evaluated under the same framework, jointly. *See Doe I v. Google LLC*, 741 F. Supp. 3d at 844; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Both claims survive because Plaintiffs have plausibly alleged an intrusion into private conversations that

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

would be highly offensive to a reasonable person. Contrary to Otter's insinuation, Plaintiffs have not assumed "that California law applies to each of their claims for intrusion upon seclusion." MTD at 12:5-6. Rather, as set forth below, the representative plaintiffs (for each sub-class) plead a viable claim for intrusion upon seclusion and invasion of privacy.

        1.      <u>California Plaintiffs Plausibly Allege Viable Claims of Intrusion upon Seclusion and Invasion of Privacy.</u>

Plaintiffs Brewer, Theus and Ryan assert a claim for intrusion upon seclusion and invasion of privacy under California law. *See* ¶¶ 274-283, 342-351. Otter challenges the viability of the claim complaining that "they did not allege their conversations were private and did not allege that they shared <u>any</u> information during the alleged virtual meetings, let alone sensitive and private information for which they had an objectively reasonable expectation of privacy." MTD at 12:19-22 (emphasis in original).

To begin, "[a] claim for invasion of privacy under the California Constitution involves similar elements" to a claim for intrusion upon seclusion under California common law. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 601. "[B]ecause of the similarity of the tests, courts consider the claims together and ask whether: (i) there exists a reasonable expectation of privacy and (ii) the intrusion was highly offensive." *Id.* (citation omitted). Plaintiffs have adequately pled both elements.

The California Plaintiffs have shown that they had a reasonable expectation of privacy—and a legally protected privacy interest—on their calls because Otter surreptitiously joined private virtual meetings and recorded conversations without Plaintiffs' knowledge or consent. *See, e.g.*, ¶¶ 7-9, 14-15, 275-278. While Otter claims that this is insufficient, other courts have rejected requirements that the communications at issue be described in more detail than Plaintiffs already have. *See, e.g.*, *In re Google Assistant Privacy Litig.*, 546 F.Supp.3d at 959 (finding that such a request "undermines the alleged private nature of the conversations").

Otter's reliance on *Low v. LinkedIn Corporation* is misplaced. MTD at 13:9-21. In *Low*, plaintiffs alleged that LinkedIn tracked only "a numeric code associated with a user and the URL of the profile page viewed" on its own website that plaintiffs voluntarily visited. *See* 900 F. Supp.

30

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

2d 1010, 1025 (N.D. Cal. 2012). Here, however, Otter was **not** the platform hosting communications (*e.g.*, Zoom or Microsoft Teams); rather, it was a third-party intercepting private communications including discussions related to work and medical care. That conduct bears no resemblance to passive profile-page view tracking.

Rather, *In re Facebook, Inc.* is on point. There, the court found that Facebook's capturing of private chats on its own domain could be highly offensive as a violation of social norms, even though the users shared the information on social media. *See* 402 F. Supp. 3d 767 (N.D. Cal. 2019). The court thus rejected the same argument Otter now makes, stating that "[t]he social norm Facebook created with its product is purposefully sharing with one's friends, not having one's information shared by Facebook with unknown companies and individuals" *Id.* at 797. The same principle applies here. Plaintiffs were speaking with their friends, doctors, or colleagues, and had no expectation that third-party company would collect, retain, and monetize their conversations.

Otter's argument that Plaintiffs were merely "passive participants" is a non-starter as it ignores the well-pled facts that each Plaintiff *participated* in a Zoom or Microsoft Teams call that Otter recorded, then retained their "conversational data" and "Speaker Data." ¶¶ 137, 146, 149, 158, 161. Those allegations plausibly suggest that Plaintiffs were active participants in the conversations, and the Court must accept them as true, at this stage. *See Iqbal,* 556 U.S. at 679. Otter's request is contrary to FRCP 12 pleading principles.

Otter argues that its conduct is not "highly offensive," but the Complaint sets forth detailed allegations demonstrating the opposite. Those allegations show, in sum, that Otter secretly joined private meetings, recorded, transcribed, and then used the recording, voice, and transcript for AI training, without consent. *Compare* MTD at 13:22-28, *with, e.g.*, ¶¶ 137, 149, 161 (alleging that Otter "illegally record[ed]… and retain[ed]…conversational data and Speaker Data."). Plaintiffs reasonably believed they were speaking only with other meeting attendees and certainly not a separate company capturing and analyzing their confidential communications for its own purposes. *See* ¶¶ 7-9, 275-278. This surreptitious collection, disclosure, and use of confidential recordings are sufficient to satisfy the "highly offensive" element at the pleading stage. *See, e.g., Hammerling v.*

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("conduct is more likely to be highly offensive where the defendant surreptitiously collects sensitive information even while the plaintiff…is not even using the defendant's services.") (cleaned up) (citing *Facebook Tracking*, 956 F.3d at 595); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1129-1130 (9th Cir. 2017) (holding that a surreptitious recording could still be "highly offensive" even if it was taken in a public place).

Finally, what constitutes "highly offensive" information and whether an objectively reasonable expectation of privacy exists here are mixed questions of law and fact that cannot (and should not) be resolved on the pleadings. *See, e.g., Facebook Tracking,* 956 F.3d at 603 (stating that where plaintiffs pled allegations of "surreptitious data collection," whether those practices "could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

2.  Plaintiff Dolan plausibly alleges a viable intrusion upon seclusion claim under Washington law.

To plead an intrusion upon seclusion claim under Washington law, a plaintiff must allege: (i) an intentional intrusion, physical or otherwise, upon the solicitude of the plaintiff, or his private affairs; (ii) with respect to the manner or affair in which plaintiff claims was invaded, the plaintiff had a legitimate and reasonable expectation of privacy; (iii) the intrusion would be highly offensive to a reasonable person; and (iv) that the defendant's conduct is a proximate cause of damage to the plaintiff. *See, e.g.*, *Gray v. Amazon, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023) (internal citation omitted). Otter seeks dismissal of the claim asserting Plaintiff Dolan fails to allege (i) an intentional intrusion, (ii) a legitimate and reasonable expectation of privacy, and (iii) the existence of harm or damage because of the intrusion. See MTD at 14:23-15:16. Otter is wrong three times over.

a.   *Plaintiff Dolan alleges an intentional intrusion.*

An actor "commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Gray v. Amazon, Inc.*, 653 F. Supp. 3d at 860. Dolan alleges that Otter never obtained the necessary permission to intercept his Zoom call. ¶¶ 217-219. Otter did not disclose that it was recording his

conversation, never sought his consent, and never informed him of the purpose for its interception. *See* ¶¶ 212, 215, 216-19. Moreover (and as evidenced by its Privacy Policy), Otter was certainly aware that its technology could be used in violation of the privacy rights of others but nonetheless attempt to foist the responsibility to handle those issues to Otter accountholders, rather than itself. ¶¶ 73-76. It designed the product intentionally to not provide notice and seek consent as its competitors do. ¶¶ 82-85. Taken together, these are plausible allegations supporting the existence of an intentional intrusion. *See Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 998 (W.D. Wash. 2022) (denying motion to dismiss privacy claims where Amazon's Alexa devices surreptitiously recorded users' private conversations and stored them without adequate notice or consent).

> b. *Dolan Had a Reasonable Expectation of Privacy in his Zoom Calls.*

Under Washington law, "the invasion or intrusion must be of something which the general public would not be free to view." *Mark v. Broad King Co.*, 27 Wash. App. 344, 356 (1980). Phone calls and similar communications generally give rise to a presumption of a reasonable expectation of privacy. *See, e.g.*, *State v. Hinton*, 179 Wash.2d 862 (2014) (describing generally the protection afforded to phone calls and presumption of intended privacy); *State v. Faford*, 128 Wash.2d 476, 485 (1996) (extending statutory privacy protection under Washington's Wiretap Act to cordless phones); *see also Katz v. United States*, 389 U.S. 347 (1967) (recognizing existence of a reasonable expectation of privacy when individual made a phone call from public telephone booth).

Factors bearing on the reasonableness inquiry include the subject matter of the communication, the presence or potential presence of third parties, the role of the non-consenting party, and his or her relationship to the third party. *See State v. Clark*, 129 Wash.2d 211, 224-27 (2014).[4] Although Washington courts have not explicitly addressed the issue, other jurisdictions often recognize a privacy interest in a person's work history and related information. *See Hamilton v. RadioShack Corp.*, 2011 U.S. Dist. LEXIS 125683, at *3-4 (N.D. Cal. Oct. 31, 2011) (applying

---

[4] The concept of a "reasonable expectation of privacy" appears in various areas of Washington law, including the tort of intrusion upon seclusion and the definition of "private" communications under Washington's Wiretap Act, RCW§ 9.73.030. For clarity, Plaintiffs provide an integrated analysis that satisfies both standards and have found no authority requiring the concepts to be analyzed separately.

Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

California law).

Here, Dolan participated in a Zoom call regarding professional opportunities. ¶ 213. Although Otter argues that Plaintiff Dolan does not allege that he was more than a passive attendee on the call, this is not true. The Complaint clearly states that "*Plaintiff Dolan used Zoom to communicate* regarding certain professional opportunities, which Otter recorded, transcribed, and stored without his knowledge, permission, or consent." ¶ 213 (emphasis added).

The subject matter of the communication—professional opportunities—is one in which there is a reasonable expectation of privacy. As for the presence of third parties or access to the general public, Plaintiff Dolan's alleges that he "had no reason to suspect that the conversation was being recorded," "was not aware, nor did he have any reason to suspect that Otter would obtain . . . his conversational data [,]" and he never was given the opportunity to consent to the interception of his communications. ¶¶ 212, 215, 216-19. Otter had no necessary or obvious role in the communication between Plaintiff Dolan and others. And as far as Plaintiff Dolan's relationship to Otter goes, he alleges he did not have a preexisting relationship with Otter before or during the call. ¶ 214. In sum, Plaintiff Dolan's expectation of privacy was legitimate and reasonable.

      c.  *Plaintiff Dolan suffered harm as a result of Otter's actions.*

Otter claims that Plaintiff Dolan did not allege harm or damage based upon its intrusion upon seclusion. But Otter's self-serving claim is demonstrably false as Plaintiff Dolan alleges that by intercepting, recording, and transcribing his Zoom call, his privacy interest was invaded, and this invasion gives rise to damages. *See* ¶ 235; *see also White v. Town of Winthrop*, 128 Wash.App. 588, 597 (2005) (citing RESTATEMENT (SECOND) OF TORTS § 652H(a)) (indicating that if one prevails in a privacy action, they may recover for invasion of their privacy interest). Additionally, Plaintiff Dolan states that he "felt frustrated, embarrassed, and stressed to learn that his conversation was recorded without his consent . . . ." ¶ 222. Plaintiff Dolan has adequately pled damages in the form of mental and emotional distress for which he can also recover if he prevails. *Id.*; *see also White*, 128 Wash. App. at 597 (citing RESTATEMENT SECOND OF TORTS § 652H(b)).[5]

---

[5] Plaintiffs withdraw Plaintiff Winston's intrusion upon seclusion claim (Count III) to the extent it is asserted under Illinois law. Plaintiffs reserve the right to seek leave to amend.

34                  Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**K.      Plaintiffs Plead a Viable Unjust Enrichment Claim.**

In California, "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023). Courts in this Circuit routinely treat such claims as a quasi-contract claim seeking restitution. *See Astiana,* 783 F.3d 753, at 762; *see also Swafford v. Int'l Bus. Mach. Corp.*, 383 F. Supp. 3d 916, 931-32 (N.D. Cal. 2019).

Plaintiffs plausibly allege that Otter unlawfully collected and used their conversational data and voiceprints for its commercial gain, including improving its products and training systems, generating revenue and unjustly enriching itself at Plaintiffs' expense. ¶¶ 274-279.

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) does not compel dismissal. There, the plaintiffs abandoned damages on the eve of trial after the years of litigation; while here, the case is at the pleading stage where courts in this District routinely permit equitable relief to be pled in the alternative. *See Pitre v. Kevita, Inc.*, No. 24-cv-06309-JST, 2025 WL 2294913, at *8 (N.D. Cal. Aug. 8, 2025) (holding equitable claims may be pled in alternative); *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 795-796 (N.D. Cal. 2024) (collecting cases).

Otter's other argument, that Plaintiffs allege no specific, measurable benefit received by Otter at Plaintiffs' expense, also fails. Plaintiffs allege Otter recorded and exploited their valuable conversational data and voiceprints, using it to train AI systems, improve its services, solicit users, and share data with vendors and other third parties. *Compare* MTD at 17:10-14. *with* ¶¶ 76-77, 81-87, 98; *see also Brown v. Google LLC*, 685 F. Supp. 3d at 920 (recognizing economic value of personal data for unjust enrichment purposes).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs submit that Otter's motion to dismiss should be denied in its entirety. Further, Plaintiffs respectfully request that the Court grant them leave to replead any claims dismissed as a result of Otter's motion.

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Respectfully submitted,

Dated: March 6, 2026

**CLARKSON LAW FIRM, P.C.**
By: *Yana Hart*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070


**LEVIN LAW, P.A.**
By: *Brian Levin*
Brian Levin (*admitted by PHV*)
*brian@levinlawpa.com*
Brandon T. Grzandziel (*pro hac vice* to be filed)
*brandon@levinlawpa.com*
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
Tel: (305) 539-0593
Jacob Polin (SBN 311203)
*jacob@levinlawpa.com*
344 20th Street
Oakland, California 94612
Tel: (305) 402-9050


**WERMAN SALAS P.C.**
By: *Douglas M. Werman*
Douglas M. Werman (*admitted by PHV*)
*dwerman@flsalaw.com*
John J. Frawley (*admitted by PHV*)
*jfrawley@flsalaw.com*
Anne R. Kramer
*akramer@flsalaw.com*
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008

36                                    Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**MEYER WILSON WERNING CO., LPA**
By: *Matthew R. Wilson*
Matthew R. Wilson (SBN 290473)
*mwilson@meyerwilson.com*
Jared W. Connors (*admitted by PHV*)
*jconnors@meyerwilson.com*
Ryne E. Tipton (*admitted by PHV*)
*rtipton@meyerwilson.com*
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Tel: (614) 224-6000
Fax: (614) 224-6066

**ALMEIDA LAW GROUP LLC**
By: *David S. Almeida*
David S. Almeida (*admitted by PHV*)
849 W. Webster Avenue
Chicago, Illinois 60614
Tel.: (708) 437-6476
*david@almeidalawgroup.com*

*Attorneys for Plaintiffs & the Proposed Classes*

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

**ATTESTATION UNDER LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the undersigned filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: March 6, 2026                                   **CLARKSON LAW FIRM, P.C.**

/s/ *Yana Hart* _____
By: Yana Hart, Esq.

38                    Case No: 5:25-cv-06911-EKL

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**